UNITED STATES of America,
Plaintiff,

v.

STERLING NATIONAL BANK & TRUST
COMPANY OF NEW YORK, Defend-
ant and Third-Party Plaintiff,

v.

Charles S. SMITH, Third-Party
Defendant.

72 Civ. 1533.

United States District Court,
S. D. New York.

June 5, 1973.

Whitney North Seymour, Jr., U. S. Atty., S. D. N. Y., New York City, for plaintiff; David P. Land, Milton Sherman, Asst. U. S. Attys., of counsel.

Harry Gurahian, New York City, for Sterling National Bank & Trust Co. of New York.

PALMIERI, District Judge.

This is a motion by the Government for summary judgment. Fed.R.Civ.P. 56. The material facts in the case are not in dispute.

The case involves a dispute relating to the obligations of the defendant Bank as the result of a tax levy affecting one of its depositors.

The United States brought this action against Sterling National Bank & Trust Company of New York (Bank) after the defendant failed to honor a tax levy

made by the Internal Revenue Service (I.R.S.) upon the checking account of one of the Bank's depositors.

Since the chronology of events is of crucial importance it is set forth below.

On February 13, 1970, the I.R.S. made an income tax assessment and demand for payment against Charles S. Smith (taxpayer) and his wife, jointly and severally, for the taxable period ending December 31, 1968, in the amount of $8,211.38.

On June 23, 1970, the taxpayer borrowed $6,097.32 from the Bank as evidenced by his promissory note. Under the terms of the note the taxpayer gave the Bank a continuing lien and right of setoff upon any and all cash balances the taxpayer maintained with the Bank to be applied against any and all indebtedness, whether matured or unmatured.

On August 14, 1970, the I.R.S. made a second assessment and demand against the Smiths. This claim involved unpaid income taxes for the taxable period ending December 31, 1969, and amounted to $6,475.20.

The I.R.S. filed notices of lien with respect to the two assessments referred to above on November 5, 1970, and March 2, 1971, respectively.

On June 9, 1971, the I.R.S. served the Bank with a notice of levy. The levy indicated that the taxpayer was indebted to the Government in the amount of $15,531.26 ($14,686.58 in assessed taxes, plus statutory additions). The levy directed the Bank to remit to the I.R.S. all of the taxpayer's property then in the Bank's possession. The taxpayer maintained a checking account with the Bank which on the day the levy was served had a balance of $5,132.36. Prior to service of the levy the Bank had not acted to restrict the taxpayer's right to withdraw funds from the account.

Because the Bank did not remit the funds in the taxpayer's account as the

notice of levy had instructed, the I.R.S. served the Bank with a final demand on June 18, 1971. This instrument directed the Bank to honor the levy and set forth the provisions of law which govern dishonor.

On July 2, 1971, the Bank exercised its alleged right of setoff and applied $3,779.64 to satisfy the indebtedness of the taxpayer, remitting what was left in the taxpayer's account, the sum of $1,352.72, to the I.R.S.

On August 5, 1971, the I.R.S. advised the Bank by letter that the I.R.S. had a prior right to the entire $5,132.36 balance of the taxpayer's account and demanded payment of the remaining $3,779.64 within two weeks. The Bank did not comply with this demand.

On April 14, 1972, this action was brought by the Government to recover $3,779.64 (the amount collected by the Bank by way of setoff), $1,889.82 (half of the first amount as a 50 percent penalty pursuant to 26 U.S.C. §§ 6332(c)(1) and 6332(c)(2)), plus interest and costs of the action.

On September 26, 1972, the taxpayer died.

On December 5, 1972, his estate paid his tax indebtedness plus interest in full.

In the present posture of the case the claim for $3,779.64 has been rendered moot by virtue of the payment of the tax and interest by the taxpayer's estate subsequent to the motion for summary judgment. The Government presses its motion, however, on its 50 percent penalty claim, upon the premise that in exercising its setoff on July 2, 1971, the Bank dishonored the tax levy, notice of which was previously served on the Bank on June 9, 1971, and June 18, 1971; and that the Bank was without reasonable cause for its action.

Section 6332(c)(1)[1] provides that when one dishonors a tax levy, he is per-

---

I. § 6332. *Surrender of property subject to levy*

   *     *     *     *     *

(c) Enforcement of levy.—

  (1) Extent of personal liability.—Any person who fails or refuses to surrender

sonally liable to the United States for the value of the property not surrendered, together with costs and interest. Section 6332(c)(2)[2] provides that when the dishonor is "without reasonable cause," such person shall be liable for a penalty equal to 50 percent of the "amount recoverable" under § 6332(c)(1). The amount sued for by the Government and claimed as the amount recoverable at the outset of its lawsuit was $3,779.64, plus interest and costs. This was the amount allegedly dishonored and collected by the Bank by way of setoff.

The government is now seeking half of this amount as its "additional" recovery by way of penalty. As already indicated, and because of the payment by the taxpayer's estate, the penalty amount is the only stake in this litigation in its present posture.

The issues presented by the motion are the following: (1) whether at the time of the Government's notice of levy on June 9, 1971, there were "property or rights to property subject to levy" within the purview of § 6332(a);[3] (2) whether the Bank dishonored the levy; (3) assuming dishonor of the levy by the Bank, whether its action was "without reasonable cause" within the purview of § 6332(c)(2), and (4) whether in the present posture of the case the Bank is liable for the penalty under § 6332(c)(1).

### The Bank Was Holding "Property or Rights to Property Subject to Levy"

Title 26 U.S.C. § 6331(a)[4] provides for a levy "upon all property and rights

any property or rights to property, subject to levy, upon demand by the Secretary or his delegate, shall be liable in his own person and estate to the United States in a sum equal to the value of the property or rights not so surrendered, but not exceeding the amount of taxes for the collection of which such levy has been made, together with costs and interest on such sum at the rate of 6 percent per annum from the date of such levy. Any amount (other than costs) recovered under this paragraph shall be credited against the tax liability for the collection of which such levy was made. [26 U.S.C. § 6332]

2. § 6332 . * * *
    *       *       *       *       *
    (c) * * *
    (2) Penalty for violation.—In addition to the personal liability imposed by paragraph (1), if any person required to surrender property or rights to property fails or refuses to surrender such property or rights to property without reasonable cause, such person shall be liable for a penalty equal to 50 percent of the amount recoverable under paragraph (1). No part of such penalty shall be credited against the tax liability for the collection of which such levy was made. [26 U.S.C. § 6332]

3. § 6332. * * *
    (a) Requirement.—Except as otherwise provided in subsection (b), any person in possession of (or obligated with respect

to) property or rights to property subject to levy upon which a levy has been made shall, upon demand of the Secretary or his delegate, surrender such property or rights (or discharge such obligation) to the Secretary or his delegate, except such part of the property or rights as is, at the time of such demand, subject to an attachment or execution under any judicial process. [26 U.S.C. § 6332]

4. § 6331. Levy and distraint
    (a) Authority of Secretary or delegate. —If any person liable to pay any tax neglects or refuses to pay the same within 10 days after notice and demand, it shall be lawful for the Secretary or his delegate to collect such tax (and such further sum as shall be sufficient to cover the expenses of the levy) by levy upon all property and rights to property (except such property as is exempt under section 6334) belonging to such person or on which there is a lien provided in this chapter for the payment of such tax. Levy may be made upon the accrued salary or wages of any officer, employee, or elected official, of the United States, the District of Columbia, or any agency or instrumentality of the United States or the District of Columbia, by serving a notice of levy on the employer (as defined in section 3401(d)) of such officer, employee, or elected official. If the Secretary or his delegate makes a finding that the collection of such tax is in jeopardy, notice and demand for immediate pay-

to property (except such property as is exempt under § 6334) belonging to such a person *or on which there is a lien pro-vided in this chapter for the payment of such tax."* The application of this language here turns on whether the funds on deposit with the Bank in the taxpayer's account were subject to the levy. The Government contends that they were and in claiming priority for its tax levy against the Bank's right to setoff it relies directly upon two Ninth Circuit decisions. They are Bank of Nevada v. United States, 251 F.2d 820 (9th Cir., 1958), cert. denied, 356 U.S. 938, 78 S. Ct. 780, 2 L.Ed.2d 813, and United States v. Bank of America National Trust & Savings Ass'n, 229 F.Supp. 906 (S.D.Cal., 1964), aff'd 345 F.2d 624 (9th Cir., 1965), cert. denied, 382 U.S. 927, 86 S.Ct. 534, 15 L.Ed.2d 340 (1965). The Government contends that since the depositor taxpayer had the right to withdraw and use the account until the Bank took action to foreclose this right by setoff, the balance in the account was subject to the tax levy at any time before the Bank asserted its right of set-off. The facts in the instant action are very similar to the facts in the *Nevada* case and the *Bank of America* case, *supra*, which held that a bank did not have a lien priority by exercising its right of setoff.

In the *Bank of Nevada* case, the I.R.S. made a tax assessment against a taxpayer on November 15, 1954. The taxpayer then borrowed money from the bank on April 16, 1955, and, based upon a pre-existing financial statement dated August 31, 1954, the bank had a right to accelerate repayment of the loan. If the loan was accelerated, the bank could use a right of setoff. On June 10, 1955, the I.R.S. served a levy on the bank with respect to the balance of the taxpayer's bank account, and subsequently the bank exercised its right of setoff. In a suit to determine lien priorities, the court held for the Government. In so holding, the court stated:

> The [Bank] could not protect itself from a federal tax levy by the taxpayer's inchoate agreement, or by an asserted right of set-off arising from a debt that was not in existence at the time the tax liens arose . . . The liens came into being at the time the assessments were made. 251 F.2d, at 825.

In the *Bank of America* case, a factual pattern analogous to the *Nevada* case was present and the court held for the Government. In so holding the court stated:

> It is inconceivable that, by Section 6323 [old statute][5] Congress meant to say if a bank or other entity became a purchaser or a mortgagee in one transaction, funds held by it as the result of another transaction (i. e., creation of a debtor-creditor relationship in respect to a bank deposit) would be beyond the reach of the Government in a proceeding such as this.

> Nor do we find persuasive the [bank's] argument that the taxpayer himself, being indebted to the bank could not demand payment on his accounts and therefore the Government could not demand such payment. While the bank asserts it had a right of set-off, it had not exercised this right [until after the tax assessment was made and the levy served]. 229 F.Supp., at 909.

---

ment of such tax may be made by the Secretary or his delegate and, upon failure or refusal to pay such tax, collection thereof by levy shall be lawful without regard to the 10-day period provided in this section. [26 U.S.C. § 6331]

5. Prior to the 1966 amendments to § 6323 (a), a priority was given to a "mortgagee [or] pledgee" who perfected his interest prior to the time a tax lien was filed. The 1966 amendments substituted "holder of a security interest" for the terms "mortgagee" and "pledgee" so as to co-ordinate the terms with the Uniform Commercial Code. The change of terminology does not change the validity of the Court's holding since the terms are used interchangeably.

The controlling factor in both these cases appears to be that the I.R.S. made tax assessments prior to the time the banks obtained a right of setoff against the taxpayers' bank accounts. In consequence, any right the banks had to the taxpayers' properties was encumbered by the pre-existing tax lien.[6] These Ninth Circuit decisions are accepted as persuasive authority that the Bank's right of setoff is not prior to the federal tax lien and hence cannot be asserted to defeat the federal tax levy. Additionally, a more recent decision of that circuit, United States v. First National Bank of Arizona, 348 F.Supp. 388 (D.Ariz., 1970), affirmed *per curiam*, 458 F.2d 513 (9th Cir., 1972), although not limited to the facts of the *Bank of Nevada* case, was thought by the Ninth Circuit to require the same result. In the *Bank of Arizona* case the District Court said (*supra*, 348 F.Supp. at p. 389):

> Until a bank has notified its depositor and then *exercised* [emphasis in original] its right of set off, the depositor is free to withdraw from his account, and it is inconceivable that Congress, by virtue of 26 U.S.C. § 6323, intended to prohibit the Government from levying on that which is plainly accessible to the delinquent taxpayer-depositor.

The Government lien, therefore, has priority over an exercise of setoff which takes place after the Government's levy. It follows that the defendant Bank acted improperly when, holding as it did the sum of $5,132.36 in the taxpayer's checking account on the date the levy was served, it remitted only $1,352.72 to the I.R.S. and exercised its right of setoff to the $3,779.64 balance to satisfy the taxpayer's promissory note.

The Court does not accept the Bank's suggestion that the issue here is simply one of priority between the federal tax lien and the Bank's right of setoff. A suit such as this, to enforce a levy under § 6332(c), is not one in which the issue of lien priority can be appropriately tried. While the stipulation of the facts has permitted this Court to dispose of the issue, it is nevertheless extraneous to this type of lawsuit. There are other means by which the Bank could have the issue of lien priority determined. Until this levy enforcement action was instituted almost one year after the levy was served, the Bank had a wide variety of options to contest the levy and to raise its claim of lien priority. First, pursuant to 26 U.S.C. § 7426,[7] the Bank could have honored the levy and instituted an action

---

6. For a discussion of the federal tax lien generally and its relation back to the tax assessment see Mertens, The Law of Federal Income Taxation (1971 ed.), Vol. 9, p. 96. Also, 26 U.S.C. § 6322 provides in pertinent part as follows:
§ 6322. *Period of lien*
  Unless another date is specifically fixed by law, the lien imposed by section 6321 shall arise at the time the assessment is made and shall continue until the liability for the amount so assessed (or a judgment against the taxpayer arising out of such liability) is satisfied. . . .

7. § 7426. *Civil actions by persons other than taxpayers*
  (a) Actions permitted.—
    (1) Wrongful levy.—If a levy has been made on property or property has been sold pursuant to a levy, any person (other than the person against whom is assessed the tax out of which such levy arose) who claims an interest in or lien on such property and that such property was wrongfully levied upon may bring a civil action against the United States in a district court of the United States. Such action may be brought without regard to whether such property has been surrendered to or sold by the Secretary or his delegate.
    *    *    *    *    *
  (b) Adjudication.—The district court shall have jurisdiction to grant only such of the following forms of relief as may be appropriate in the circumstances:
    *    *    *    *    *
    (2) Recovery of property.—If the court determines that such property has been wrongfully levied upon, the court may—
    *    *    *    *    *
    (B) grant a judgment for the amount of money levied upon. . . .
[26 U.S.C. § 7426]

against the Government seeking to recover a money judgment based upon its claim of lien priority. Second, pursuant to 28 U.S.C. § 2410 [8] and § 1006(b) of the New York Civil Practice Law and Rules, the Bank could have instituted a defensive interpleader action in a state court asserting its claim of lien priority. Third, pursuant to 28 U.S.C. § 2410 and Rule 22 of the Federal Rules of Civil Procedure, the Bank could have instituted an interpleader action in a federal court asserting its claim of lien priority. There may be other procedural means for the Bank to secure a determination of the priority of its right of setoff and the federal tax lien. See 28 U.S.C. § 1346. [9] The process of levy and distraint is indeed an "extraordinary procedure," see Flora v. United States, 362 U.S. 145, 196, 80 S.Ct. 630, 4 L.Ed.2d 623 (1960), and, in effect, the Government's last resort for collecting taxes due. It would be incongruous to permit it to be used as a procedural vehicle for the disposition of issues of lien priority.

Interests affecting the national fisc are at stake in this action and there are no discernible policy reasons for permitting any disregard of a levy. The language of § 6332(a) is clearly mandatory. It states that a person upon whom a levy has been made "shall" surrender such property in his possession to the Secretary or his delegate excepting only such property as is subject to attachment or execution under judicial process. The fact of possession by the Bank being undisputed, and the exception having no factual application here, it follows that the defense of lien priority cannot be entertained in this lawsuit. This finds support in United States v. Manufacturers Trust Co., 198 F.2d 366, 369 (2d Cir., 1952), in which the court stated:

> The terms of the statute permit the third person upon whom is made a demand for property in his possession only two defenses; that he is not in possession of property of the taxpayer which is subject to distraint, or that the property is subject to prior judicial attachment or execution. The statute admits of no other defenses. *The appellee [Bank] raises neither of these defenses and that determines the matter.* (Emphasis added).

The Bank's defense of lien priority, based upon its claim that its contractual right of setoff constituted a security interest within the meaning of federal law, stems from an exception set forth in § 6323(a) providing that if the third party lienor becomes "holder of a security interest" before the tax lien is publicly filed, the third party has a priority over the tax lien. The answer to

---

8. § 2410. *Actions affecting property on which United States has lien.*

(a) Under the conditions prescribed in this section . . . the United States may be named a party in any civil action or suit in any district court, or in any State court having jurisdiction of the subject matter—

(1) to quiet title to,

(2) to foreclose a mortgage or other lien upon,

(3) to partition,

(4) to condemn, or

(5) of interpleader or in the nature of interpleader with respect to,

real or personal property on which the United States has or claims a mortgage or other lien.

\*　　\*　　\*　　\*　　\*

[28 U.S.C. § 2410]

9. § 1346. *United States as defendant.*

(a) The district courts shall have original jurisdiction, concurrent with the Court of Claims, of:

(1) Any civil action against the United States for the recovery of any internal-revenue tax alleged to have been erroneously or illegally assessed or collected, or any penalty claimed to have been collected without ·authority or any sum alleged to have been excessive or in any manner wrongfully collected under the internal-revenue laws;

\*　　\*　　\*　　\*　　\*

(c) The jurisdiction conferred by this section includes jurisdiction of any setoff, counterclaim, or other claim or demand whatever on the part of the United States against any plaintiff commencing an action under this section.

\*　　\*　　\*　　\*　　\*

[28 U.S.C. § 1346]

this contention is that none of the definitional elements of a "security interest" has been demonstrated to exist in this proceeding. A security interest is defined by 26 U.S.C. § 6323(h)(1) [10] as any interest in property acquired by contract providing the property is in existence and the interest has become protected under local law against a subsequent judgment lien arising out of an unsecured obligation. In this case, the two tax liens were publicly filed on November 11, 1970 and March 3, 1971, respectively. Thus, in order for the Bank to qualify as the holder of a security interest, the Bank must demonstrate that at some time prior to November 11, 1970 (the date the first tax lien was publicly filed) it had satisfied all the prerequisites of a security interest, that is, it had acquired an interest in the taxpayer's property by contract, the property was in existence, and the property interest so acquired was protected against a subsequent judgment lien. The Government correctly maintains that none of these prerequisites has been met.

■ First, the Bank acquired no "interest in property acquired by contract" within the meaning of Section 6323(h)(1). The federal definition of security interest takes its meaning from Article 9 of the Uniform Commercial Code and a lien not thereby protected does not qualify as a security interest for purposes of the federal definition. Notwithstanding the Bank's suggestions to the contrary, Section 9–104 of Article 9 of the Uniform Commercial Code specifically states that Article 9 does not apply to any right of setoff or any bank deposit. Thus, the Bank could not as a matter of law obtain a security interest

within the intendment of Article 9 by virtue of its contractual right of setoff with respect to the taxpayer's bank accounts. It follows that it was not the holder of a security interest within the context of this case. The fact that Article 4 of the Uniform Commercial Code sets forth rules governing bank deposits and collection, or that Section 9–306(4)(d)(i) of Article 9 sets forth the identifiable cash proceeds rule in the event of an insolvency proceeding, has no bearing on the specific statute providing that rights of setoff and liens against bank accounts will not be classified as security interests within the meaning of Article 9.

■■ Second, even if the Bank had a lien by standards other than the Uniform Commercial Code, the property subject to its lien was not in existence as required by § 6323(h)(1). This is so because the Bank had not satisfied the test of choateness until it exercised its right of setoff and this occurred after the tax liens were publicly filed and the tax levy served. The choateness rule requires that the private lien be perfected in the sense that there is nothing more to be done. This required absolute certainty (1) as to the identity of the lienor, (2) as to the property subject to the lien, and (3) as to the amount of the lien. United States v. City of New Britain, 347 U.S. 81, 84, 74 S.Ct. 367, 98 L. Ed. 520 (1954). Not until the Bank exercised its right of setoff and determined the current balance of the checking account and the unpaid balance of the loan had it met these prerequisites and perfected its lien in the sense that there was nothing further to be done. This rule has been followed in New

10. § 6323. *Validity and priority against certain persons*

\* \* \* \* \*

(h) Definitions.–For purposes of this section and section 6324–

(1) Security interest.—The term "security interest" means any interest in property acquired by contract for the purpose of securing payment or performance of an obligation or indemnifying against loss or liability. A security in-

terest exists at any time (A) if, at such time, the property is in existence and the interest has become protected under local law against a subsequent judgment lien arising out of an unsecured obligation, and (B) to the extent that, at such time, the holder has parted with money or money's worth.

\* \* \* \* \*

[26 U.S.C. § 6323]

York in similar cases. In re City of New York, 11 A.D.2d 240, 205 N.Y.S.2d 125 (2d Dept.1960), aff'd 12 N.Y.2d 1051, 239 N.Y.S.2d 880, 190 N.E.2d 240 (1963); Metropolitan Life Ins. Co. v. United States, 9 A.D.2d 356, 194 N.Y.S.2d 168 (1st Dept.1959); and Southold Savings Bank v. Finkelstein, 40 Misc.2d 381, 243 N.Y.S.2d 397 (Sup.Ct.Nassau Co.1963).

■ Third, the Bank's private and unrecorded lien was not protected against a subsequent judgment creditor —a further requirement of § 6323(h)(1). The Bank's reliance on § 151 of the New York Debtor and Creditor Law McKinney's Consol.Laws, § 12 is misplaced. This statute enacted certain exceptions to the general rule announced in Appleton v. National Park Bank of New York, 241 N.Y. 561 (1925), aff'g 211 A.D. 708, 208 N.Y,S. 228 (1st Dept.1925), aff'g 122 Misc. 248, 202 N.Y.S. 516 (Sup.Ct.N.Y.Co.1924) that a bank's right of setoff with respect to a depositor's account will not have priority over an intervening judgment creditor of the depositor. The remedies set forth in § 151 do not apply as against the persons not enumerated. Schreibman v. Chase Manhattan Bank, 15 A.D.2d 769, 224 N.Y.S.2d 977 (1st Dept.1962); In Re Equitable Casualty & Surety Co., 235 A.D. 250, 256 N.Y.S. 561 (1st Dept. 1932); and Van Schaick v. Pennsylvania Exchange Bank, 236 A.D. 453, 260 N.Y.S. 37 (1st Dept.1932). Since the Bank cannot in all instances prevail over the hypothetical judgment lien creditor, it has not met the rigid judgment lien creditor test set forth in federal law.

■ In addition to relying on § 151 of the Debtor and Creditor Law for the proposition that in all instances a right of setoff has priority over a hypothetical judgment lien creditor, the Bank also relies on § 151 for the proposition that it creates a security interest pursuant to the federal test. Again, this reliance is misplaced because the federal definition requires that the lienor have a *property interest* created by contract. Section 151 does not create property interests, but merely provides certain creditor remedies to existing property interests. It establishes an order of lien priorities between specified competing claimants. Moreover, the remedy provided in § 151 is not a remedy created by contract. Finally, § 151 does not provide that its remedies are effective against a federal tax lien. Even if § 151 did provide that a filed federal tax lien was inferior to an unexercised right of setoff, such provision would violate Article VI of the United States Constitution which declares that the laws of the United States are the supreme law of the land. A state's characterization of its liens while good for all state purposes cannot bind and restrict federal law of the federal definition of a security interest. United States v. Acri, 348 U.S. 211, 75 S.Ct. 239, 99 L.Ed. 264 (1955); and United States v. Security Trust & Savings Bank, 340 U.S. 47, 71 S.Ct. 111, 95 L.Ed. 53 (1950).[11] "Federal law and federal law alone governs what is exempt from levy." [12]

The Bank complains that if its right of setoff is not deemed to be a security interest for federal purposes it will suffer economic loss. The Bank asserts that banks "could never protect themselves . . . unless they checked the tax liens every minute of every day. . . . ." This calamitous situation need not come to pass. Precautions were available to the Bank. Pursuant to

11. If the Bank's contention is correct that the Debtor and Creditor law grants a priority in respect of a federal tax lien, then it must be concluded that these two Supreme Court cases no longer govern and that In Re City of New York, supra, Metropolitan Life Ins. Co., supra, and Southold Savings Bank, supra, decided by the New York courts consistently failed to apply the proper law.

12. Mertens, The Law of Federal Income Taxation (1971 ed.), Vol. 9, p. 98, citing United States v. Mitchell, 403 U.S. 190, 91 S.Ct. 1763, 29 L.Ed.2d 406 (1971).

§ 6323(b)(10) [13] the Bank could have prevailed over a federal tax lien if the taxpayer had pledged his savings account as collateral for the loan, and if the Bank had retained continuous possession of the account passbook. Additionally, the Bank could have obtained a valid and federally recognized security interest in any chattel or intangible property acquired by the taxpayer with the sum it borrowed. The Bank could also have obtained a security interest in other property of the taxpayer, apart from his checking account, and thus have acquired full protection against loss from subsequently filed tax liens. The Bank was not without an effective opportunity to protect itself against any pre-existing and unfiled tax lien and to avoid the chaos it envisions. The Bank did not avail itself of any one of a variety of opportunities afforded by federal law and must accept the legal consequence that it stands here without a valid claim of priority.

In sum, what the taxpayer can withdraw from his bank account, the Government should be able to levy upon, unless there is a specific lien priority given to the Bank's right of setoff. No such specific lien priority was present here.

The Bank relies heavily upon the decision in United States v. Harris, 249 F. Supp. 221 (W.D.La.1966), which involved the assertions of conflicting claims by the I.R.S. and a bank with respect to funds of husband and wife depositors who were the subject of tax assessments. The taxpayers were there indebted to the bank prior to the tax assessments. The taxpayers had executed collateral pledge agreements as security for their indebtedness. After receipt of the notice of levy the bank asserted its right of setoff under the pledge agreements, charging the moneys on deposit with the taxpayers' debt. In an action by the Government to foreclose the tax lien, the court held for the bank. The court distinguished both the *Bank of Nevada* case, *supra,* and the bank of America case, *supra,* on the ground that in both cases the bank obligations arose subsequent to the assessments (the time the tax liens arose under § 6322) whereas on the facts before it the bank's right of setoff existed prior to the assessment and notice of levy. The court did not rest its decision on this distinction, however. It proceeded to hold that the bank was a pledgee with a perfected lien right under the Louisiana Civil Code; and further, that by federal definition the lien had acquired sufficient substance and had become so perfected as to defeat a later arising federal tax lien under the "first in time, first in right" rule, citing United States v. City of New Britain, *supra*; United States v. Security Trust and Savings Bank, 340 U.S. 47, 71 S.Ct. 111, 95 L.Ed. 53 (1950), and United States v. Pioneer American Ins. Co., 374 U.S. 84, 83 S.Ct. 1651, 10 L.Ed.2d 770 (1963).

The defendant Bank here suggests that it comes squarely within the ruling in the *Harris* case, and that the grounds upon which the *Bank of Nevada* case, *supra,* and *Bank of America* case, *supra,* were distinguished there are applicable here. This Court does not agree. The controlling statutory provisions are §§ 6323(a) and 6323(h) of Title 26 of the United States Code. This Court has already indicated why it does not believe that the Bank's unexercised right of setoff is a "security interest" as defined in

---

13. § 6323. * * *

(b) Protection for certain interests even though notice filed.—Even though notice of a lien imposed by section 6321 has been filed, such lien shall not be valid—
   *     *     *     *     *
   (10) Passbook loans.—With respect to a savings deposit, share, or other account, evidenced by a passbook, with an institution described in section 581 or 591, to the extent of any loan made by such institution without actual notice or knowledge of the existence of such lien, as against such institution, if such loan is secured by such account and if such institution has been continuously in possession of such passbook from the time the loan is made.
   *     *     *     *     *
[26 U.S.C. § 6323]

§ 6323(h)(1). Sections 6321[14] and 6322 of the Code provide that on the date a tax assessment is made, a lien arises in favor of the Government upon all the taxpayer's property and rights to property, and case law holds that such lien attaches to subsequently acquired property and rights to property. On February 2, 1970, a $8,211.38 assessment was made against the taxpayer, and on August 14, 1970, an additional $6,475.20 assessment was made. Thus, on each of these dates the Government had valid and subsisting legal liens upon all property and rights to property currently owned and subsequently acquired by the taxpayer.

On June 19, 1970, subsequent to the first $8,211.38 tax assessment, and prior to the second $6,475.20 tax assessment, the taxpayer borrowed $6,097.32 from the Bank, and pursuant to a private and unrecorded note agreement the Bank acquired a right of setoff in respect to the taxpayer's bank accounts. The taxpayer was free to spend the borrowed sum in any manner he chose and he was not required to maintain any minimum bank account deposits. Based on these facts alone, the Government's $8,211.38 legal lien on the taxpayer's bank account, which arose prior to the Bank's right of setoff, has priority over the Bank's lien. This result must follow because the taxpayer's property was encumbered with a pre-existing tax lien and any subsequent lien of the Bank would be junior to this lien.

In conclusion, the bank account in question, even though subject to setoff by the Bank, constituted property or rights to property subject to levy within the purview of 26 U.S.C. § 6331(a).

### The Bank Dishonored the Levy

There is no factual dispute that the Bank failed to remit the funds in the taxpayer's account as the notice of levy instructed. It first withdrew for its own account the sum of $3,779.64 under its alleged right of setoff and it is this amount which was the principal bone of contention when this lawsuit was instituted. The dishonor of the levy was clear and unequivocal.

### The Action of the Bank in Withholding $3,779.64 was Without Reasonable Cause

The dishonor of the levy was without reasonable cause within the purview of 26 U.S.C. § 6332(c)(2). The meaning of reasonable cause in this context is made clear by the legislative history. The Bank's belief that its right to setoff was a prior lien on the account is not reasonable cause for dishonoring the levy. A person's belief that he has a prior lien on property or rights to property belonging to the taxpayer is not a basis for dishonoring a levy. The correctness of that belief, while subject to litigation in proceedings under statutory provisions already discussed, does not give rise to any option to disregard the levy. "Reasonable cause" for failing to honor a levy is confined to narrow limitations by its legislative history. The House Report states that "it is intended that a bona fide dispute over the amount owing to the taxpayer (by the property holder) or over the legal effectiveness of the levy itself is to constitute reasonable cause under this provision." See House Report No. 1884 (89th Cong.2d Sess. 17 (1966). A similar explanation of the "without reasonable cause" provision is

14. § 6321. *Lien for taxes*
    If any person liable to pay any tax neglects or refuses to pay the same after demand, the amount (including any interest, additional amount, addition to tax, or assessable penalty, together with any costs that may accrue in addition thereto) shall be a lien in favor of the United States upon all property and rights to property, whether real or personal, belonging to such person.
    [26 U.S.C. § 6321]

given later in the House Report. At that point the House Report states:

> The penalty is not applicable in cases in which a bona fide dispute exists concerning the amount of the property to be surrendered pursuant to a levy or over the legal effectiveness of the levy. For example, the person levied upon may be obligated to make a wage payment to the delinquent taxpayer at a future date. If a levy is made upon such person, "reasonable cause" might exist to refuse to honor the levy. If, however, a court decides in a later enforcement suit that the levy is applicable to the payment, then reasonable cause would usually not exist to refuse to honor a levy made under similar circumstances with respect to a later, similar payment.

An intensive and long congressional study preceded the passage of the Federal Tax Lien Act of 1966. The fact that a property holder's belief that he had a lien prior to that of the Government is not mentioned in that enactment as "reasonable cause" for failing to honor a levy is a persuasive indication that Congress did not intend that such a belief should be so considered.

### The Present Posture of the Litigation Does Not Bar Recovery of the Penalty

█ It follows from what has just been said that the Bank is chargeable with the 50 percent penalty for which it is here being sued—that is, $1,889.82 or half of the amount it failed to remit after the levy was served. This conclusion has not been reached without difficulty because of the wording of § 6332(c)(2). The term "amount recoverable" as used in this statute would imply that the tax in question was susceptible of collection at the time of the levy. It may also imply that the tax remains susceptible of collection (but for the action of the Bank) at such time as the penalty is sought under the statute. But here the tax has been paid and the tax obligation has been fulfilled. One might well ask whether the penalty should be imposed when the tax obligations to the Government have been completely paid. Additionally, the statutory language can be construed to mean that the penalty is applicable only when the person who refuses to surrender property when a levy is made is *personally* liable under § 6332(c)(1). The language of § 6332(c)(2) lends itself to this reading since it speaks in terms of the penalty being "in addition to the personal liability imposed by paragraph (1)" and refers back to "the amount recoverable under paragraph (1)." If there is no personal liability imposed by paragraph (1) and no amount recoverable under paragraph (1), no penalty could be said to attach under paragraph (2). Although these considerations have not been suggested to the Court by the litigants, they have been the cause of some reflection. Alluring as they may appear to be, they are rejected because a restrictive construction of the language in question would not be consonant with the Draconian purposes of the statute or serve the legitimate ends of the fisc. The taxes here were recoverable from the taxpayer when the Bank received the notice of the levy. The Bank's refusal without reasonable cause to pay the entire sum on deposit in the taxpayer's account rendered it liable instanter for that entire sum and for the 50 percent penalty in addition. Except for reducing the amount of the recovery, the fortuitous circumstance that the taxpayer's estate paid the tax after suit was brought does not alter the legal consequences which accrued when the levy was served and dishonored. To hold otherwise would seriously deplete the effectiveness of this important tax collection tool.

The Government's motion for summary judgment is granted. It is so ordered.