**AURORA MARITIME CO., LTD. Plaintiff,**

v.

**ABDULLAH MOHAMED FAHEM & CO. Defendant.**

**MEDMAR, INC., Plaintiff,**

v.

**FAHEM & CO. Defendant.**

**Nos. 94 Civ. 318 (SS), 94 Civ. 3319 (SS).**

United States District Court, S.D. New York.

July 19, 1995.

Tisdale & Associates, New York City (Patrick Lennon, of counsel), for Aurora Maritime Co. and Medmar, Inc.

Milbank, Tweed, Hadley & McCloy, New York City (Russell E. Brooks, of counsel), for The Hongkong & Shanghai Banking Corp., Ltd.

### Opinion and Order

SOTOMAYOR, District Judge.

In these admiralty cases, garnishee The Hongkong and Shanghai Banking Corporation Limited ("HSBC") seeks to vacate attachments issued to plaintiffs under Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims ("Rule B"). For the reasons set forth below, the motion to vacate the attachments is denied.

### Background

The facts in this case are not in dispute. Plaintiffs Aurora Maritime ("Aurora") and Medmar Inc. ("Medmar") entered into an agreement with Abdullah Mohamed Fahem & Co. ("Fahem") to transport grain from the United States to Yemen. Disputes involving each of the plaintiffs arose over the charter agreement, which disputes were submitted to arbitrations in London, England[1]. See Affidavit of Richard A. Spehr, sworn to June 24, 1994 ("Spehr Aff."), at ¶ 2.

To protect their rights in the event that they prevailed in their arbitrations, each plaintiff obtained orders from this Court pursuant to Rule B attaching an account Fahem kept at HSBC in the amount of $633,713.39 (hereinafter the "Account"). HSBC has had outstanding loans to Fahem in excess of $56 million since the Account was attached. HSBC argues that the Rule B attachments should be vacated because New York Debtor and Creditor Law § 151 ("§ 151") gives it an absolute right of set-off that survives even after a Rule B attachment has been effectu-

---

1. Fahem is involved in the arbitration proceedings in London, but has not appeared in the instant actions.

ated. Plaintiffs claim that Rule B preempts the set-off remedy provided for in § 151.

### Discussion
### Preemption in Maritime and Admiralty Cases

The parties agree that preemption questions in admiralty cases are governed by *American Dredging Co. v. Miller,* —— U.S. ——, 114 S.Ct. 981, 127 L.Ed.2d 285 (1994). Plaintiff in *American Dredging* was an injured seaman who brought Jones Act and unseaworthiness claims in a Louisiana state court. Defendant moved to dismiss the action under the doctrine of forum non conveniens. Although the Louisiana Code of Civil Procedure rejects the doctrine of forum non conveniens in Jones Act and maritime law cases, the trial court held that it was bound to apply that doctrine under federal maritime law and granted defendant's motion to dismiss the complaint.

■ The *American Dredging* Court observed that a state court could not provide remedies " 'in rem for any cause of action within the admiralty jurisdiction.' " *Id.,* —— U.S. at ——, 114 S.Ct. at 985 (quoting *Red Cross Line v. Atlantic Fruit Co.,* 264 U.S. 109, 124, 44 S.Ct. 274, 277, 68 L.Ed. 582 (1924)). The Court recognized, however, that a state court could exercise in personam jurisdiction and " 'adopt such remedies, and ... attach to them such incidents, as it sees fit' so long as it does not attempt to make changes in the 'substantive maritime law.' " *Id.,* —— U.S. at ——, 114 S.Ct. at 985 (quoting *Madruga v. Superior Court of California,* 346 U.S. 556, 561, 74 S.Ct. 298, 301, 98 L.Ed. 290 (1954) (quoting *Red Cross Line,* 264 U.S. at 124, 44 S.Ct. at 277)). When a state law changes substantive maritime law, however, the state law is preempted. Substantive maritime law is changed where the state remedy works "material prejudice to the characteristic features of the general maritime law or interferes with the proper harmony and uniformity of that law in its international and interstate relations." *Id.* (quoting *S. Pac. Co. v. Jensen,* 244 U.S. 205, 216, 37 S.Ct. 524, 529, 61 L.Ed. 1086 (1917)).

The *American Dredging* Court went on to examine whether the doctrine of forum non conveniens was either a " 'characteristic feature' of admiralty or a doctrine whose uniform application is necessary to maintain the 'proper harmony' of maritime law." *Id.* The Court found that the Louisiana Code's rejection of the application of the forum non conveniens doctrine in Jones Act and maritime law cases was not preempted because that doctrine did not "originate in" and was not "unique to" federal admiralty law. *Id.,* —— U.S. at ——, 114 S.Ct. at 986; *see also id.,* —— U.S. at ——, 114 S.Ct. at 987 (refusal to apply forum non conveniens does not work material prejudice to a characteristic feature of general maritime law because forum non conveniens has long been a doctrine of general application).

The Court recognized that its holding might produce disuniformity, and "[i]t would be idle to pretend that the line separating permissible from impermissible state regulation is readily discernible in our admiralty jurisprudence, or indeed is even entirely consistent within our admiralty jurisprudence." *Id.,* —— U.S. at —— – ——, 114 S.Ct. at 987–88 (citations omitted). The Court, however, did not find it necessary to harmonize these tensions because forum non conveniens is essentially

a supervening venue provision, permitting displacement of the ordinary rules of venue when, in light of certain conditions, the trial court thinks that jurisdiction ought to be declined. But venue is a matter that goes to process rather than substantive rights—determining which among various competent courts will decide the case. Uniformity of process (beyond the rudimentary elements of procedural fairness) is assuredly not what the law of admiralty seeks to achieve, since it is supposed to apply in all the courts of the world. Just as state courts, in deciding admiralty cases, are not bound by venue requirements set forth for federal courts in the United States Code, so also they are not bound by the federal common-law venue rule (so to speak) of forum non conveniens. Because the doctrine is one of procedure rather than substance, petitioner is wrong to claim support from our decision in *Pope & Talbot, Inc. v. Hawn,* 346 U.S. 406, 74

S.Ct. 202, 98 L.Ed. 143 (1953), which held that Pennsylvania courts must apply the admiralty rule that contributory negligence is no bar to recovery ... Unlike burden of proof (which is a sort of default rule of liability) and affirmative defenses such as contributory negligence (which eliminate liability), forum non conveniens does not bear upon the substantive right to recover, and is not a rule upon which maritime actors rely in making decisions about primary conduct—how to manage their business and what precautions to take.

*Id.,* —— U.S. at ——, 114 S.Ct. at 988 (footnote omitted).

### Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims

Maritime attachments have been a part of American jurisprudence since the Constitution was ratified. *See Manro v. Almeida,* 23 U.S. (10 Wheat.) 473, 6 L.Ed. 369 (1825).

In 1842, Congress empowered the Supreme Court to promulgate maritime rules. *Schiffahartsgesellschaft Leonhardt & Co. v. A. Bottacchi S.A. De Navegacion,* 773 F.2d 1528, 1533 (11th Cir.1985). These rules were superseded by the Rules of Practice in Admiralty and Maritime Cases, which were promulgated by the Supreme Court in 1920. *Id.* In 1966, the Supplemental Rules for Certain Admiralty and Maritime Claims (the "Supplemental Rules") replaced the 1920 Rules of Practice. *See* 28 U.S.C. §§ 2071–2072.

Rule B, which is similar to a rule of attachment promulgated by the Supreme Court in 1844, provides in relevant part:

> With respect to any admiralty or maritime claim in personam a verified complaint may contain a prayer for process to attach the defendant's goods and chattels ... if the defendant shall not be found within the district ... [i]f the plaintiff or plaintiff's attorney certifies that exigent circumstances ... [exist] the clerk shall issue a summons and process of attachment and garnishment and the plaintiff shall have the burden on a post-attachment hearing

under Rule E(4)(f) to show that exigent circumstances existed. In addition, or in the alternative, the plaintiff may, pursuant to Rule 4(e) [of the Federal Rules of Civil Procedure], invoke the remedies provided by state law for attachment and garnishment or similar seizure of defendant's property. Except for Rule E(8) these Supplemental Rules do not apply to state remedies so invoked [2].

■ In short, Rule B permits a plaintiff to attach an absent defendant's property independent of and separate from any right of attachment permitted by state law. *Reibor Int'l Ltd. v. Cargo Carriers (KACZ–CO) Ltd.,* 759 F.2d 262, 265 (2d Cir.1985) (citing 7A J. Moore & A. Pelaez, Moore's Federal Practice ¶ B.03 (2d ed. 1983)).

■ Rule B attachments are designed to ensure the presence of a defendant as well as to assure satisfaction of a judgment in the event the suit is successful. *Royal Swan Nav. Co. Ltd. v. Global Container Lines, Ltd.,* 868 F.Supp. 599, 601 (S.D.N.Y.1994) (Baer, J.) (citing *Swift & Co. Packers v. Compania Colombiana Del Caribe,* 339 U.S. 684, 70 S.Ct. 861, 94 L.Ed. 1206 (1950)). Questions as to the validity of Rule B attachments are generally governed by federal law. *Reibor,* 759 F.2d at 265 (citations omitted); *see also Clipper Shipping Co, Ltd. v. Unimarine Bulk Transp., Inc.,* 790 F.Supp. 56, 61 n. 6 (D.Conn.1992) (Cabranes, J.) (while courts may look to state law where no federal precedent exists, law of Rule B attachments remains a matter of federal common law). The party that obtains an attachment under Rule B bears the burden of showing its validity. *See* Supplemental Rule E(4)(f).

■ It is well settled that liens created under state law may be enforced in admiralty. *American Dredging,* —— U.S. ——, 114 S.Ct. 981, 127 L.Ed.2d 285 (citation omitted). Indeed, on its face, Rule B authorizes parties to use state law remedies for attachment and garnishment in addition to, or in the alternative of, Rule B attachment. *See Result Ship-*

---

**2.** Supplemental Rule E(8) provides, in relevant part:

> An appearance to defend against an admiralty and maritime claim with respect to which

there has issued process in rem, or process of attachment ... may be expressly restricted to the defense of such claim....

*ping Co., Ltd. v. Ferruzzi Trading USA, Inc.*, 56 F.3d 394, 402 n. 4 (2d Cir.1995) (Rule B allows plaintiffs to use attachment procedure set forth in Rule, or to invoke state law attachment remedies). I, therefore, reject plaintiff's suggestion that Rule B completely displaces all liens created under state law. *Cf. Gade v. Nat'l Solid Wastes Management Ass'n*, 505 U.S. 88, 98, 112 S.Ct. 2374, 2383, 120 L.Ed.2d 73 (1992) (statute not so pervasive as to make reasonable the inference that Congress left no room for the states to supplement it).

The outcome of the instant case, instead, hinges on a narrow issue: does a § 151 set-off "trump" a previously filed Rule B attachment? Thus, the real issue in this case is not whether § 151 and Rule B conflict, but rather one of lien priority. By resolving the instant case in this manner, I avoid reading conflict into § 151 and Rule B, and therefore do not engage in the preemption analysis set forth in *American Dredging*. *See, e.g., CSX Transp., Inc. v. Easterwood*, —— U.S. ——, ——, 113 S.Ct. 1732, 1737, 123 L.Ed.2d 387 (1993) (federal courts should avoid unnecessary intrusion upon state law).

### New York Debtor and Creditor Law Section 151

■ Section 151 is entitled "Right of set off against unmatured debts," and provides, in relevant part:

Every debtor shall have the right upon ... (f) the issuance of a warrant of attachment against any of the property of a creditor, to set off and apply against any indebtedness, whether matured or unmatured, of such creditor to such debtor, any amount owing from such debtor to such creditor, at or at any time after ... [the issuance of the warrant of attachment] and the aforesaid right of set off may be exercised by such debtor against such creditor or against ... attachment creditor of such creditor ... notwithstanding the fact that such right of set off shall not have been exercised by such debtor prior to the making, filing or issuance or service upon such debtor of [a warrant of attachment] ...

N.Y. Debt. & Cred. Law § 151 (McKinney's 1994 Supp.).

The scope of § 151 has been defined in two New York Court of Appeals cases. In *Indus. Comm'r of New York v. Five Corners Tavern, Inc.*, 47 N.Y.2d 639, 419 N.Y.S.2d 931, 393 N.E.2d 1005 (Ct.App.1979), the Court of Appeals considered the relationship between § 151 and CPLR 5232, the provision that allows a judgment creditor to execute a levy against the property of a judgment debtor. The Court held that where a garnishee is also a creditor of a judgment debtor, the right of set-off provided for in § 151 is not extinguished by the issuance of a levy under New York CPLR 5232. *Id.* at 647, 419 N.Y.S.2d 931, 393 N.E.2d 1005. Examining the legislative history of § 151, the Court observed that that statute was designed to "permit a setoff by a garnishee any time after the issuance of execution, and even at any time subsequent to levy by service of execution...." *Id.* at 646, 419 N.Y.S.2d 931, 393 N.E.2d 1005.

The Court of Appeals reaffirmed this result in *Aspen Indus., Inc. v. Marine Midland Bank*, 52 N.Y.2d 575, 439 N.Y.S.2d 316, 421 N.E.2d 808 (Ct.App.1981), concluding that a garnishee's § 151 right of set-off is "superior to the rights of intervening judgment creditors and may be exercised even after the judgment creditor has undertaken enforcement of his [or her] claim against the judgment debtor ... the arsenal of enforcement mechanisms under CPLR article 52, clearly are subject to the superior right of setoff ... [provided for in § 151]." *Id.* at 582, 439 N.Y.S.2d 316, 421 N.E.2d 808 (citations omitted). In other words, § 151 was designed by the New York State Legislature to "'cover the field'" with respect to other enforcement devices arising under New York law. *Id.*

While the New York Court of Appeals has concluded that a § 151 set-off is superior to other levies arising under New York law, no federal court has decided whether the right of set-off under § 151 is superior to a previously filed Rule B attachment. Nevertheless, in *United States v. Sterling Nat'l Bank and Trust Co. of New York*, 360 F.Supp. 917 (S.D.N.Y.1973), *aff'd in part, rev'd in part*, 494 F.2d 919 (2d Cir.1974), the Second Circuit considered whether a bank could assert

contractual and statutory rights of set-off against a debtor-depositor's account after the Internal Revenue Service served a tax levy, pursuant to a federal statute, against the same account. The district court accepted the government's argument that because the depositor had the right to withdraw and use the account in question, the account was subject to a tax levy at any time before the bank exercised its right of set-off. *Sterling,* 494 F.2d at 921; *see also id.* at 925 ("[s]ection 151 does not create property interests, but merely provides certain creditor remedies to existing property interests.").

Affirming the district court's interpretation of § 151, the Second Circuit observed that

[t]he literal language of 151 quoted above would indicate that the full amount in the account is 'property' of the bank's customer. Under any realistic definition of 'property' the full amount in Smith's [the debtor-depositor's] account was his property or his right to property. Until the bank acted to restrict his right to draw on the funds, Smith was entitled to write checks up to the full amount in the account.

*Id.* at 922[3]. Because the bank in *Sterling* had not exercised its right of set-off until after the tax levy had been served, the Second Circuit found that the bank could not exercise its right of set-off subsequent to the execution of the tax levy. *Id.* at 921–22.

HSBC argues that *Sterling* is inapplicable because the lien in that case was brought on behalf of the United States Government and was a part of a comprehensive statutory scheme that severely limits any defenses to the execution of a tax lien. *See Sterling,* 494 F.2d at 921. The Second Circuit's decision, however, did not hinge on the identity of the party who executed the tax levy or the nature of the statutory scheme giving rise to the levy. Instead, the Second Circuit's analysis rested on the bank's failure to act, in-

cluding, *inter alia,* not exercising its set-off rights prior to the execution of the tax levy. *Compare Sterling,* 494 F.2d at 922 (bank must act exercise set-off rights in order to restrict funds) *with Five Corners,* 47 N.Y.2d 639, 647, 419 N.Y.S.2d 931, 393 N.E.2d 1005 (interpreting district court in *Sterling* as holding that a bank cannot exercise its right of set-off after a levy is executed under federal law.). *See also* HSBC's Memorandum of Law in Response to Aurora, Medmar and Rawbulk's August 26th Submissions and in Further Support of its Motion to Vacate at 19 (conceding that bank in *Sterling* had no lien prior to execution of tax levy).

I, therefore, reject HSBC's claim that its failure to exercise its § 151 rights before the Rule B attachments were made is of no consequence. In order to gain free title to funds of a debtor-depositor, a bank must first take the step of exercising its rights under § 151. It is true that § 151 was designed to give banks the ability to set-off debts after the filing of other levies. This "priority," however, is only in relation to other "enforcement devices" existing under New York State law. *See Aspen,* 52 N.Y.2d at 582, 439 N.Y.S.2d 316, 421 N.E.2d 808. Once plaintiffs attached the Account under Rule B, a limited property right was created under federal law. This property right cannot be defeated by HSBC's subsequent assertion of a state law set-off right. *See Western Bulk Carriers (Australia) Pty. Ltd. v. P.S. Int'l., Ltd.,* 762 F.Supp. 1302, 1307, 1306 n. 3 (S.D.Ohio 1991) ("nothing in Rule B ... would per se prevent an attachment of property simply because the property is subject to an arguably superior secured [state law] interest."); *see also Tonder v. M/V The Burkholder,* 630 F.Supp. 691, 694 (D.V.I. 1986) (Rule B attachment valid against College of the Virgin Islands even though terri-

---

**3.** In *Peoples Westchester Sav. Bank v. Federal Deposit Ins. Corp.,* 961 F.2d 327, 330 (2d Cir. 1992), the Second Circuit held that a bank account is presumed to be a general account, which means that title to the money belongs to the bank. *See also Swan Brewery Co., Ltd. v. U.S. Trust Co. of New York,* 832 F.Supp. 714, 717–18 (S.D.N.Y.1993) (Sweet, J.) (same). In such circumstances, the depositor and the bank enter into a creditor-debtor relationship.

*United States v. All Funds Presently on Deposit or Attempted to be Deposited in Any Accounts Maintained at American Express Bank,* 832 F.Supp. 542, 549 n. 5 (E.D.N.Y.1993) (Glasser, J.) (citations omitted). These cases do not, however, change the fact that Fahem had the right to withdraw the full amount of its account at any time prior to the execution of any levies or attachments and that a Rule B attachment is made in recognition of that right.

torial law exempts that institution from judicial processes such as attachment).

In sum, I find that § 151 and Rule B are independent statutory schemes that provide creditors and garnishees with the means to create a property interest in a bank account. Under either § 151 or Rule B, however, a property interest is created only when a party complies with the dictates of the rule; e.g., a party must execute its right of set-off under § 151 in order to gain a recognizable legal interest in a debtor-depositor's account. Because plaintiffs obtained Rule B attachments before HSBC exercised its set-off rights under § 151, plaintiffs gained a limited property interest under federal law that cannot be defeated by a subsequently executed state law set-off right. As I have not read § 151 and Rule B in a manner that conflicts, I have not engaged in the preemption analysis set forth in *American Dredging.*

### Certification for Appeal

28 U.S.C. § 1292(b) provides: [w]hen a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he [or she] shall so state in writing in such order. I find that the requirements for an interlocutory appeal have been met in the instant case. The relationship between § 151 and Rule B presents significant issues for all parties involved in domestic and international shipping. Despite the importance of this issue, there is virtually no case law on point. Finally, a review of this issue by the Second Circuit would serve the interests of judicial economy. Currently, arbitrators in London are considering claims filed by plaintiffs against Fahem. HSBC's claim is entirely separate from these arbitrations, and therefore will not be resolved by the outcome of those proceedings. Thus, once the arbitrations have been resolved, there is a substantial possibility that HSBC will have to resort to further litigation to decide the legal issues concerning the Account. This further litigation could be averted by an immediate appellate review of the questions involved in the instant action.

### Conclusion

For the reasons discussed above, HSBC's motion to vacate plaintiffs' Rule B attachment is denied. I reach no other issues. The Clerk of the Court is directed to certify this matter to United States Court of Appeals for the Second Circuit pursuant to 28 U.S.C. § 1292(b).

**SO ORDERED.**