## UNITED STATES v. BANK OF UNITED STATES et al.

District Court, S. D. New York.

Feb. 6, 1934.

Martin Conboy, U. S. Atty., of New York City (Walter H. Schulman, Asst. U. S. Atty., of New York City, of counsel), for the United States.

Carl J. Austrian, of New York City (Henry L. Bayles and Arthur Ofner, both of New York City, of counsel), for defendant Bank of United States.

Israel J. Beck, of Freeport, L. I. (Isaac H. Beck, of Freeport, L. I., of counsel), for defendant Pankin.

WOOLSEY, District Judge.

My decision in this case is that a judgment must be entered dismissing the complaint without costs.

I. The case was tried on a stipulation of facts, amplified by the admission of certain exhibits which were put in without objection, and some slight oral evidence, which I do not consider of special materiality owing to the point of view about the case which has formed itself in my mind after reading the stipulation of facts, the exhibits, and hearing argument on the points of law involved.

II. The stipulation of facts, which forms the basis of the complaint, is as follows:

"It is hereby stipulated and agreed for the purposes of this action only that the following are facts but that either party may offer such evidence, not contrary hereto or inconsistent herewith, as is deemed desirable, subject to the rulings of the Court on its competency, relevancy and materiality:

"1. At all times hereinafter mentioned, the plaintiff was and now is a corporation sovereign and body politic.

"2. At all times hereinafter mentioned, the defendant, The Bank of United States, was and now is a corporation, organized and existing under and by virtue of the laws of the State of New York; and the defendant, George Pankin, was and now is a citizen and resident of the City, State and Eastern District of New York.

"3. On or about April 5, 1922, the taxpayer, Jacob J. Dix, filed with the plaintiff his individual income tax return for the calendar year 1921, setting forth no tax due thereon but claiming a net loss in the sum of $7,714.67.

"4. On or about February 26, 1926, the said Jacob J. Dix and the Commissioner of Internal Revenue executed a consent in writing or waiver, waiving the time prescribed by law for the making of any assessment of income, excess profits or war profits tax due on any return made by him for the calendar year 1921. By its provisions, said consent in writing or waiver was to remain in effect until December 31, 1926.

"5. Thereafter, on or about March 18, 1926, the Commissioner of Internal Revenue duly made an assessment of income tax for said calendar year 1921 against said Jacob J. Dix in the sum of $1,892.08, which assessment was transferred to the Fourteenth Internal Revenue Collection District of New York in September, 1927, for collection.

"6. No part of said assessment of $1,892.08 was prior to July 12, 1930 or has subsequently thereto been paid by said taxpayer, Jacob J. Dix.

"7. On or about October 2, 1929, said Jacob J. Dix made a demand promissory note to the order of the defendant, The Bank of United States, a photostat copy of which is annexed hereto and made a part hereof as Exhibit A and the reverse side of which said note is annexed hereto and made a part hereof as Exhibit B.

"That on November 26, 1929, there was a balance due from said Jacob J. Dix to the defendant, The Bank of United States, on said note, the sum of $34,800.00, according to said Exhibit B.

"8. During the years 1929 and 1930, said taxpayer, Jacob J. Dix, had with The Bank of United States a regular deposit and checking account, in which during those years he from time to time made deposits and from which he from time to time effected withdrawals, either by checks signed by him and drawn to the order of divers persons, or by checks drawn to 'Cash' or drawn to himself.

"Annexed hereto and made a part hereof as Exhibit C is a photostat copy of a ledger sheet of the defendant, The Bank of United States, showing the aforesaid account of said Jacob J. Dix between April 25, 1930 and July 3, 1930, indicating the amounts of checks drawn and paid on said account, the amounts of deposits made in said account by said Jacob J. Dix and manifesting a balance of $497.56 in favor of said Jacob J. Dix on July 3, 1930.

"9. On July 12, 1930, a notice of tax lien (Form 668) dated July 11, 1930, was duly filed with the Clerk of the United States District Court for the Southern District of New York by one David Schwalberg, Deputy Collector of Internal Revenue for the Fourteenth Internal Revenue Collection District of New York, against all property of said Jacob J. Dix within the Southern District of New York.

"10. On July 12, 1930, a warrant for distraint (Form 69) dated July 7, 1930, a notice of levy on bank deposit (Form 668A) dated July 7, 1930 and a notice of tax lien (Form 668) dated July 11, 1930, were served by said Deputy Collector Schwalberg on the defendant, The Bank of United States and on the defendant, George Pankin, at which time said Deputy Collector demanded the surrender, delivery and payment over of the balance of bank deposit of the said Jacob J. Dix in the sum of $497.56, which demand was at that time refused by the said defendants.

"11. On July 12, 1930 the defendant, Bank of United States, sent to said Jacob J. Dix a notice, of which a photostat copy is annexed hereto as Exhibit D, and said notice was received by said Jacob J. Dix.

"12. The said account of said Jacob J. Dix, Exhibit C, as aforesaid, manifests on July 12, 1930 a debit memorandum in the sum of $497.56, and on July 12, 1930 a balance of $.00 with this legend written thereon: 'Hold Balance.'

"13. On July 25, 1930 said balance of $497.56 was taken from the 'suspense account'

to which it had been credited by the defendant, the Bank of United States, and was by it applied against the balance of $34,800.00 due on the said demand promissory note of Jacob J. Dix, with the result that the balance due on said note was reduced to the sum of $34,302.-44, according to Exhibit B.

"14. On or about September 29, 1930 a final notice and demand (Form 668C), dated September 26, 1930, for payment of said deposit balance of $497.56, was served by the said Deputy Collector Schwalberg on the defendant and said demand was refused by the defendants.

"15. The defendants have refused and still refuse to pay to the plaintiff the sum of $497.-56 or any part thereof, notwithstanding the institution of this suit."

III. The situation is one of really unusual interest, it seems to me, from a legal standpoint.

■ It may be said, first, that the government's procedure with regard to the levy which it sought to make on the bank account was, in my opinion, correct under the provisions dealing with such procedure, contained in title 26 United States Code, §§ 116 and 117 (26 USCA §§ 116, 117). It is obvious, of course, that when a third party, whether it be the government or not, seeks to attach or to levy on a chose in action by which a sum of money is owed by one party to the other, the only way to insure the effectiveness of the levy is by notification in appropriate form to the obligor on the chose in action, in this case the bank. These steps having, in my opinion, all been properly taken by the United States, I can move on to the question of what the United States, got, if anything, when it made this levy.

■ IV. Of course, it is commonplace that when a man makes a deposit in a bank and does nothing further the bank becomes his debtor for the amount of his deposit and he becomes the creditor of the bank in that amount.

What rights the bank has of offset may depend upon the law of the particular state or the particular specific arrangements that may have been made with the depositor, but we only have to deal with the situation in the present case, and that may, I think, fairly be summarized:

The taxpayer, who was the depositor in this case, Jacob J. Dix, had an assessment for additional income taxes for the calendar year 1921, made against him on March 18, 1926, by the Commissioner of Internal Revenue.

On October 2, 1929, Jacob J. Dix borrowed the sum of $56,000 from the Bank of United States and gave to the Bank of United States a demand promissory note for the said sum. That note is annexed to the stipulation of facts.

V. Between October 2, 1929, when this note was given, and November 26, 1929, Mr. Dix had reduced this note by payment, so that on November 26, 1929, there remained $34,-800 due to the bank on demand.

Up to the time of the attempted levy on the bank account of Mr. Dix, which occurred on July 12, 1930, there had not been any further reduction in this note, and during this interim period Mr. Dix had deposited moneys from time to time in his account with the Bank of United States and had withdrawn moneys from that account and no steps had been taken by the bank to apply any of the deposits made by him in further reduction of the note.

After a notice was served on December 12, 1930, on Mr. Pankin, vice president of the Thirty-Second Street Branch of the Bank of United States, he at once took the matter up with the vice president in charge of legal matters, Mr. Pollock, and the balance remaining at that time in the bank account of Mr. Dix, namely, $497.56, was transferred to suspense account pending a decision by the bank as to their rights in the premises.

Subsequently, on July 25, 1930, this sum of $497.56 was credited against the demand promissory note and the account was closed out.

The question which arises herein is this:

The government presses the point that there were two relationships—two substantive rights in personam, to use Professor Thomas E. Holland's convenient phrase—existing, as it were, in parallel between the depositor and the bank, and that until these were fused, as it is confessed the bank had a right to do at any time, the United States claims that it could come in and by service of the appropriate levy under the provisions of the income tax laws get hold of the balance in the bank, i. e. reach the $497.56, which was far less than the balance of the income tax due, in derogation to the bank's rights. It relies on the fact that its sovereignty gives it priority over other creditors against actual funds and contends that it can rise to a position, vis-à-vis the bank, which is higher than the position of the depositor on whose bank account it sought to make the levy.

The situation could really be described in

all its legal implications at least as a garnishment of this bank account.

VI. It is settled law, as shown by the case of North Chicago Rolling-Mill Co. v. Ore & Steel Co., 152 U. S. 596, 14 S. Ct. 710, 38 L. Ed. 565, that when one seeks to reach a chose in action owned by one's debtor by garnisheeing it by notice to the obligor thereof, the rights of the garnisher cannot be greater than those of his debtor, i. e. the obligee of the chose in action. This was very clearly stated in the case just mentioned by Mr. Justice Jackson in 152 U. S. at page 619, 14 S. Ct. 710, 717, 38 L. Ed. 565. After discussing some English cases on the question of the rights secured by such a garnishment and quoting from the remarks of some of the Lord Justices in the case of In re Combined Weighing & Advertising Machine Company, 43 Chancery Division, 93, 104, 105, 106, in which the effect of a garnishment was under consideration, Mr. Justice Jackson said: "The proposition here laid down is in harmony with the generally recognized principle that the rights of the garnisher do not rise above, or extend beyond, those of his debtor; that the garnishee shall not, by operation of the proceedings against him, be placed in any worse condition than he would have been in, had the principal debtor's claim been enforced against him directly; that the liability, legal and equitable, of the garnishee to the principal debtor, is a measure of his liability to the attaching creditor, who takes the shoes of the principal debtor, and can assert only the rights of the latter."

This seems perfectly obvious when one reflects that one has to determine what the person, whose chose in action one is seeking to garnishee, actually has.

It would be most unfair that a third person, merely by reason of his interposition, whether he was a sovereign or not, should be able to change the rights inter sese between the obligor of the chose in action and his obligee, who is the objective of the levy or attachment.

In the present case it seems to be common ground under New York law that a demand note becomes due as soon as it is made, and, consequently, the real situation with regard to the deposit of Mr. Dix with the Bank of United States at the time of the attempted levy was that Mr. Dix owed the bank $34,800 at the time without the bank's doing anything whatever to press the note forward, and that, therefore, at the time the balance of indebtedness was very heavily against the depositor and in favor of the bank. The result of this is that there really was not any chose in action in existence on which the government could levy because there was nothing owing from the bank to Dix.

VII. I am urged that the method of dealing with this account between November 26, 1929, and the attempted levy on July 12, 1930, as an ordinary account in which deposits were accepted and from which withdrawals were allowed, had separated the rights of the bank to the note from the rights of the depositor to the balance.

I do not agree to this, and I do not think that the depositor had any rights under the circumstances. What really was going on when the bank allowed the depositor to make deposits and make withdrawals was that the depositor was really operating his account under what you might call a revocable license with the bank; certainly, in the absence of circumstances which would amount to an estoppel, such procedure could not be a basis for letting a garnisher come in and take something which the depositor himself did not have.

VIII. I think that this sufficiently covers the situation. I have not attempted to discuss in detail the terms of the demand note or the terms of other general loan and collateral agreements which were lodged from time to time by Mr. Dix with the bank, one of which was current at the time when the note was made, because it seems to me that the case really should be dealt with on the line which I have followed because broader principles are involved.

IX. With regard to Mr. Pankin, of course, the judgment must be for a dismissal of the complaint against him. He was merely a vice president of the bank without power, as the evidence shows, to have caused a payment if a levy had been made, and, therefore, it does not seem to me that he could properly fall, under the circumstances, within the provision of title 26 United States Code, § 1268a (26 USCA § 1268a).

But, as I have held the levy was not effectual, I think the question of the situation facing an officer of the bank who was without power to cause the bank to respond to the government's demand is something with which I do not have to deal further here.

An order for judgment dismissing the complaint as against both defendants without costs may be presented on notice.