**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**STERLING NATIONAL BANK & TRUST COMPANY OF NEW YORK, Defendant and Third-Party Plaintiff-Appellant,**

v.

**Charles S. SMITH, Third-Party Defendant.**

Nos. 472, 473, Dockets 73-2300, 73-2301.

United States Court of Appeals, Second Circuit.

Argued Feb. 19, 1974.

Decided March 27, 1974.

David P. Land, Asst. U. S. Atty. (Paul J. Curran, U. S. Atty., S. D. N. Y., on the brief), for appellee.

Harry Gurahian, New York City, for appellant.

Sullivan & Cromwell, David M. Huggin, and H. Rodgin Cohen, New York City, on the brief, amicus curiae for New York Clearing House Assn.

Before LUMBARD, FRIENDLY and TIMBERS, Circuit Judges.

LUMBARD, Circuit Judge:

This appeal concerns the duty of a bank to comply with a levy upon the checking account of one of its customers imposed by the Internal Revenue Service (IRS) under the authority given it by the Internal Revenue Code of 1954, as amended by the Federal Tax Lien Act of 1966, Pub.L. No. 89–719, 80 Stat. 1125. The Sterling National Bank and Trust Company of New York appeals from an order entered on June 5, 1973, in the Southern District of New York which granted the United States' motion for summary judgment and imposed a penalty of $1,889.82 on the bank for not complying with a tax levy of the Internal Revenue Service. 360 F.Supp. 917 (S.D.N.Y.1973).

I.

On February 13, 1970, the IRS made an income tax assessment and demand for payment against Charles S. Smith and his wife, jointly and severally, in the amount of $8,211.38 for the year 1968. Thereafter, Smith borrowed $6,097.32 from the Sterling Bank on June 23, 1970, giving in turn a promissory note. Under the terms of the note, the bank had a "continuing lien and/or right of set-off" for the amount due on the note, whether matured or unmatured, against any balance that Smith had in his accounts at the bank, which the bank could exercise at its option without giving Smith any notice. Subsequently on August 14, 1970, the IRS made a second assessment and demand for $6,475.20 in back taxes due from the Smiths for the year 1969. Pursuant to Int.Rev.Code of 1954, §§ 6321–6323, the IRS filed notices of its liens concerning the two assessments with the Register of New York County on November 5, 1970, and March 3, 1971, respectively.

On June 9, 1971, the IRS served the bank with a notice of levy which informed it that Smith was indebted to the United States in the amount of $15,531.25 in back taxes and statutory additions and which directed the bank to remit to IRS all of Smith's property which it held. At that time Smith's checking account had a balance of $5,132.36. Prior to the service of the levy, the bank had not restricted Smith's right to draw upon his account, and Smith had not fallen behind in his installment payments on the loan.

The bank did not remit the funds as requested and on June 18, 1971, the IRS served on the bank a final demand to turn over the funds in Smith's account. On July 2, the bank, exercising its alleged right of setoff under the terms of the June 23, 1970, loan, deducted from the funds in Smith's checking account the $3,779.64 which was still outstanding on the loan and turned over to the IRS

the balance of $1,352.72. On August 5, the IRS wrote the bank a letter which stated that the IRS had a right to the entire amount in the account and demanded the remaining $3,779.64. When the bank did not comply with this demand, the United States instituted this action against the bank to recover the $3,779.64, a statutory penalty of 50% of that amount under Int.Rev.Code of 1954, § 6332(c)(1), and interest and costs. The claim for the $3,779.64 was rendered moot when Smith died and his estate subsequently paid his tax indebtedness with interest in full. The government, however, continued its suit to recover the statutory penalty of $1,889.64 on the ground that the bank did not have reasonable cause when it refused to comply with the tax levy. Judge Palmieri granted judgment for the government, and the bank appeals.

## II.

Section 6332(a) of the Internal Revenue Code of 1954 provides (with an exception not relevant here) that "any person in possession of (or obligated with respect to) property or rights to property subject to levy upon which levy has been made" shall upon demand by the Internal Revenue Service surrender such properties and rights to the Service unless such property or rights are subject to attachment or execution under any judicial process at the time of the demand. Section 6332(c)(2) provides that any person who fails to surrender property to the IRS without reasonable cause is subject to a penalty of 50% of the amount demanded.

Three defenses are asserted here on the bank's behalf: (1) the bank held no property of Smith at the time of the levy other than the $1,352.72 it turned over; (2) the bank's right of setoff gave it a lien priority over the government's tax lien; (3) and, in any event, no penalty should be imposed because the bank was acting with reasonable cause. We have previously held that a person served with a tax levy has only two defenses for a failure to comply with the demand, which are either that the person is not in possession of the taxpayer's property or the property is subject to a prior judicial attachment or execution. United States v. Manufacturers Trust Co., 198 F.2d 366, 369 (2d Cir. 1952). See also Bank of Nevada v. United States, 251 F.2d 820, 824 (9th Cir. 1957), cert. denied, 356 U.S. 938, 78 S.Ct. 780, 2 L.Ed.2d 813 (1958); United States v. Bank of America National Trust & Savings Association, 229 F. Supp. 906, 909 (S.D.Cal.1964), aff'd per curiam, 345 F.2d 624 (9th Cir.), cert. denied, 382 U.S. 927, 86 S.Ct. 316, 15 L. Ed.2d 340 (1965). Therefore, the defense of lien priority is not before us.[1] Concerning the other two defenses, we hold that the bank did hold property of Smith's which it was obligated to turn over to the IRS, but that since the legal question was novel it should not have been penalized for its failure to comply.

The question of whether the bank held property or a right to property of Smith is one of state law, in this case New York's. Aquilino v. United States, 363 U.S. 509, 80 S.Ct. 1277, 4 L. Ed.2d 1365 (1960). It is maintained that the bank had no property of Smith other than the $1,352.72 turned over since the bank had a right to set off against the checking account any unpaid balance on the loan. Therefore, it is argued, at any one moment only the balance of the checking account funds over any unpaid obligations is property of the taxpayer held by the bank. In support of this proposition § 151 of the New York Debtor and Creditor Law, McKinney's Consol.Laws, c. 12, is cited. That provision provides in part that upon "the issuance of a warrant attachment against any of the property" of a creditor, the debtor may set off and apply the property against the creditor's indebtedness to him.

---

1. As the district court noted, 360 F.Supp. at 922–923, there are other procedures to determine who has lien priority.

Cases are also cited that have allowed banks to offset other obligations from accounts. See, e. g., Kress v. Central Trust Co. of Rochester, 246 App. Div. 76, 283 N.Y.S. 467 (1935), aff'd mem., 272 N.Y. 629, 5 N.E.2d 365 (1936).

■ We are not convinced by this argument. The cases cited deal only with the right of setoff, and not with whether the full amount in the account is "property" of the bank's customer. The literal language of § 151 quoted above would indicate that the full amount in the account is the customer's property. Under any realistic definition of "property" the full amount in Smith's account was his property or his right to property. Until the bank acted to restrict his right to draw on the funds, Smith was entitled to write checks up to the full amount in the account. Clearly then all the funds in Smith's checking account were his property at the time that the IRS served the bank with notice of levy. In similar circumstances, the Ninth Circuit has reached the same conclusion. Bank of Nevada v. United States, *supra*; United States v. Bank of America National Trust & Savings Association, *supra*.

To support the bank's position, two cases from the Southern District are cited. In United States v. Hampton Garment Co., 71–1 U.S. Tax Cas. ¶ 9357 (S. D.N.Y.1971), Hampton Garment owed money to a contractor. Under the terms of a collective bargaining agreement, Hampton was obligated to pay the wages of the contractor's employees if the contractor defaulted in payment. The contractor did so default, but prior to notice of the default the IRS served notice of a tax levy on Hampton because of the contractor's unpaid taxes. Judge Mansfield held that, unless Hampton agreed to pay the contractor all that was due it regardless of whether Hampton was obliged to pay the contractor's workers, Hampton need only turn over the difference between the two obligations to the IRS.

The case before us is clearly distinguishable from *Hampton Garment*. The thrust of that case is that the government can stand in no better position than the taxpayer whose property or right to property is being levied upon. See also United States v. Winnett, 165 F.2d 149 (9th Cir. 1947); Karno-Smith Co. v. Maloney, 112 F.2d 690 (3d Cir. 1940). Here Smith had full freedom to use the funds in his checking account until the bank acted to restrict his use. At any time up to when the IRS served its notice of levy, Smith could have written a check payable to the IRS for the balance of his account. Here the IRS was asserting no right to the funds in the checking account that Smith did not already have.

The second case cited for the bank's position is United States v. Bank of United States, 5 F.Supp. 942 (S.D.N.Y. 1934). There the bank's customer gave a demand note in return for a loan. The customer had a checking account at the bank which he regularly used for deposits and withdrawals. The government served notice of levy upon the customer's account and the bank refused to honor it. The district court held that the government was entitled to nothing because the amount outstanding on the loan was greater than the amount in the checking account. The court reasoned that since the bank could have demanded payment on the note at any time, the right of the customer to withdraw funds from his account was really a "revocable license" which the bank could withdraw even after notice of a tax levy was served. 5 F.Supp. at 945. We think this decision completely ignores the reality of the situation. Until the bank acts to restrict the right of its customer to withdraw funds from his account, the bank is holding the customer's property or his right to property. Therefore, we hold that Sterling Bank had a duty to honor the tax levy upon the Smith's

checking account.[2] To the extent that *Bank of United States* is contrary, to this holding, it is overruled.

### III.

 We now turn to the question of whether the 50% penalty of § 6332(c)(2) should be imposed on the bank for its failure to comply with the tax levy. No penalty can be imposed if the bank acted with "reasonable cause" in resisting the levy. A Senate report accompanying the Tax Lien Act of 1966 stated that "it is intended that a bona fide dispute over the amount owing to the taxpayer (by the property holder) or over the legal effectiveness of the levy itself is to constitute reasonable cause under this provision." S.Rep.No.1708, 89th Cong., 2d Sess. (1966), in 3 [1966] U.S.Code Cong. & Admin.News pp. 3722, 3740.

Since the facts were undisputed and there were cases within this circuit that supported the bank's position, the issue here is whether a bona fide legal dispute over the amount that the bank owed the taxpayer is sufficient excuse for the bank's failure to honor the levy. We have recently stated that a regional director of the National Labor Relations Board did not have the reasonable cause necessary to get a preliminary injunction under the National Labor Relations Act when it was clear that a court would not enforce an order of the Board finding that the conduct sought to be enjoined violated the Act. Danielson v. Joint Board of Coat, Suit & Allied Garment Workers' Union, ILGWU, 494 F.2d 1230, (2d Cir. 1974). The clear holding of that case is that a non-frivolous, but erroneous, argument of law is not sufficient reasonable cause for obtaining a preliminary injunction under the National Labor Relations Act. We see no reason to extend the interpretation given "reasonable cause" in the National Labor Relations Act to the same phrase in the Tax Lien Act. The same words can have different meanings in different statutes. The harm caused by a court granting a preliminary injunction against certain labor activity when it believes that activity does not violate the Labor Act is obvious. The question here is whether we should penalize the Sterling Bank for forcing the government to litigate an unsettled question of law. There is no reason to believe that Congress would wish to penalize the holder of the property levied upon for litigating a test case. Nor do we believe that failing to impose the 50% penalty in situations like this will detract from the congressional purpose of requiring compliance with tax liens. Only for purposes of this initial case did the Sterling Bank refuse to honor the tax levy with reasonable cause. It and other banks confronted with levies in similar circumstances after this decision cannot reasonably refuse to comply.

Accordingly, we affirm the district court's order insofar as it held that Sterling Bank had a duty to comply with the IRS levy and we reverse the order insofar as it imposed the 50% penalty upon the bank. No costs.

FRIENDLY, Circuit Judge (dissenting):

I respectfully dissent.

In light of Judge Lumbard's convincing demonstration that the Sterling National Bank was bound to honor the tax levy upon the entire amount of Smith's checking account, I cannot agree that a national bank, fully warned (in the IRS' August 5 letter) of the Service's position, of the strong authorities therefor, and of its intention to enforce its position, can be said to have had "reasonable cause" to believe that the levy need be honored only for the excess of the ac-

---

2. We do not think that United States v. Bank of Shelby, 68 F.2d 538 (5th Cir. 1934), is relevant here. It appears that the bank there might not have permitted the customer to withdraw funds from his account. All the funds in the account had been derived from a loan on a note and by the time the notice of levy was served on the bank, the security for the note had been sold and the customer was insolvent.

count over the amount owed to the bank. In light of longstanding judicial recognition of the importance of the Government's being able to collect the revenues swiftly and surely, see Murray's Lessee v. Hoboken Land & Improvement Co., 59 U.S. (18 How.) 272, 15 L.Ed. 372 (1856), it seems to me even more essential in this area than in the context presented by Danielson v. Joint Board of Coat, Suit & Allied Garment Workers' Union, ILGWU, 494 F.2d 1230, 1239–1245 (2 Cir. 1974), that "reasonable cause" should not be read to include a clearly erroneous view of the law, stubbornly adhered to after investigation should have disclosed the error. The majority's ruling permits a bank to pay the Government whatever its lawyers say it should, with no risk beyond having to pay the balance if it turns out to be wrong. Surely the distinctions between this case and *Hampton Garment*, the antiquarian unreality of Judge Woolsey's opinion in United States v. Bank of United States, 5 F.Supp. 942 (S.D.N.Y. 1934), and the force of the Ninth Circuit decisions, all·so ably elucidated in the majority opinion, should not have escaped the notice of Sterling's experienced counsel.

The majority says, quite properly, that no bank in the Second Circuit can ever again claim reasonable cause to act precisely as Sterling did, and the Government will scarcely founder through its failure to collect the $1,889.82 penalty here at issue. But lawyers will dream up other "reasons" why parties holding property belonging to a taxpayer should not pay this to the Government as § 6332(c) requires. I would not permit collection of the revenues to be delayed on first appearance of each such question in each jurisdiction where, as here, the question is not really close, the party had access to competent legal advice, temporary sacrifice of the funds and pursuit of other remedies against the Government would not represent any hardship, and the IRS proceeded deliberately and gave ample notice of its intention and the sound view of the law on which this was based.

I would affirm the judgment of the District Court.