**Richard HEFLEY and Kent Martin d/b/a Agri Investment Services, Appellees,**

v.

**Harry JONES, Appellant.**

No. 80–1692.

United States Court of Appeals, Tenth Circuit.

Sept. 7, 1982.

Terry W. Tippens, Fellers, Snider, Blankenship, Bailey & Tippens, Oklahoma City, Okl., and E. Edd Pritchett, Pritchett & Schnetzler, Oklahoma City, Okl., for appellees.

Tom M. Cummings, Grove & Grove, Oklahoma City, Okl., for appellant.

Before BARRETT, DOYLE and LOGAN, Circuit Judges.

WILLIAM E. DOYLE, Circuit Judge.

Jones appeals from judgments providing for damages after a trial to the court, and two orders of partial summary judgment. All has to do with a claim for breach of contract in which jurisdiction is based on the diversity of citizenship clause. The appellees Hefley and Martin, doing business as Agri Investments Services, are cattle brokers and feedlot owners who operate in Kansas. Jones is also a cattle broker, as well as a cattle rancher, in Oklahoma.

Two contracts were entered into on March 2 and March 16, 1978. Jones contracted to sell to one Bruce Bonnett, a cattle broker, 500 heifers and 1,500 steers. Delivery on the heifer contract was to take place between May 15 and June 15. In addition to the heifer contract, there was a contract pertaining to the sale of steers. Delivery on the heifers was to be May 15 and June 15 and the steers were to be delivered September 1 and 15. Jones had purchased these cattle from R & L Cattle Co. who had bought them from farmers and ranchers.

On March 6, Bonnett contracted to sell to appellees the same heifers which he had bought from Jones. Then on March 24 the same steers in the Bonnett-Jones contract were sold by Bonnett to the appellees. The Hefley-Bonnett contracts were not designated as assignments of the Bonnett-Jones contracts.

There are two other contracts which are significant between Bonnett and Jones which were dated March 9 and April 10 of 1978. In these agreements, Jones was to purchase 1,000 heifers from Bonnett and 2,050 calves. After signing the contracts, Jones proceeded to obligate himself to sell the heifers to R & L Cattle Co. and the calves to Oklahoma Livestock. Jones gave Bonnett a total of $81,500 in cash as a down payment on the March 9 and April 10 purchases.

In the first part of May, Jones became cognizant of the fact that Bonnett was in severe financial difficulty and would be unable to deliver the 1,000 heifers and the 2,050 calves. Jones, as a result of this, was placed in a difficult position. The price of cattle was rising. Jones suffered a loss because he had to go out in the marketplace in order to be able to deliver the heifers and calves under his contracts with R & L Cattle Co. and Oklahoma Livestock. Bonnett disappeared and Jones lost his $81,500 down payment as well.

On or about May 14th, Jones learned that Bonnett had contracted with appellees with respect to the 508 heifers due between May 15 and June 15, and the 1,500 steers due in September. The appellees demanded delivery on these animals from Jones as if Jones' March 2 and 16 contracts with Bonnett had been assigned to the appellees. Jones received no notice of this assignment until September of 1978.

Jones refused to deliver either the heifers or the steers to appellees as a result of his claimed right to set off against Bonnett over Bonnett's inability to deliver the 1,000 heifers and 2,050 calves. Jones sold the 508 heifers and 1,500 steers that appellees had contracted to buy. This sale was in the open market and yielded approximately $100,000 in profit over and above the price Bonnett had agreed to pay. Jones' refusal to deliver to appellees brought about this

suit for breach of the March 6 and March 24 contracts between appellees and Bonnett.

The appellees Hefley and Martin had suffered damages as a result of Jones' failure to deliver because, as cattle brokers, they had obligated themselves to sell the 508 heifers and 1,500 steers to other cattle dealers. The heifers were sold by appellees to Arnold Young, a Texas trader, on March 10. Young then sold the rights of the heifers to Heinold Cattle Market, the final stop in this chain. The 1,500 steers were assigned by appellees to Willard Sparks of Memphis, Tennessee, on April 23. When Jones refused to perform, Hefley and Martin had to cover for the cattle they were unable to produce. They did this by agreeing to reimburse Arnold Young for $39,457.50 as evidenced by a promissory note. Young had settled with Heinold, who did go into the marketplace and buy heifers at the higher present market price. Appellees agreed in the note to prosecute this suit to try and obtain Young's damages. To settle with Sparks, appellees forgave a debt one of Sparks companies owed the appellees' feed lot; this amounted to $9,245.67.

The Judge in the court below initially granted appellees' request for a partial summary judgment on the question of whether the contracts of March 6 and the 24 between the appellees and Bonnett were assignments of the contracts of March 2 and 16 between Jones and Bonnett over the sale of the 508 heifers and 1,500 steers. Thus, if these contracts were merely assignments, Hefley and Martin had the right to demand performance from Jones. Based on the depositions of Jones and his employee Moore the lower court held it to be the custom and usage in the Oklahoma cattle brokerage business that such contracts are mere assignments even where the language does not indicate this. No material factual issue was found to be in dispute on the assignment question. Accordingly, Hefley and Martin were within their rights in seeking performance from Jones.

A second motion by plaintiffs sought partial summary judgment. The court ruled that Jones had no right of set-off against Hefley and Martin over Jones' loss resulting from the dispute with Bonnett. Under Oklahoma law the lower court found that an assignee is subject to any defense that can be raised against his assignor if such defense could have been asserted against his assignor at the time of assignment. Since the Jones-Bonnett contracts of March 2 and March 16 were assigned to appellees by the Hefley-Bonnett contracts of March 6 and March 24, and in view of the fact that Jones did not find out until May that Bonnett would not deliver the 1,000 heifers and 2,050 calves, no set-off against appellees was possible.

Of procedural importance is appellant's motion filed sixteen days prior to trial seeking to amend his answer so as to assert that appellees were not the real parties in interest. Fed.R.Civ.P. 17(a). The court refused the request to amend because it was prosecuted with inexcusable delay; all the relevant facts were known to appellant from the time the suit began. Jones had moved for summary judgment on his real party in interest defense. However, the motion to amend the answer was denied, and so this issue became moot.

At the trial to the court on the question of damages the Judge awarded appellees the $39,457.50 along with 14% interest reflecting a promissory note between Young and appellees. Also, the debt for $9,245.67 between appellees' feedlot and that of Sparks was found to be a legitimate item of damages. Another $762 was granted as lost commissions reflecting the difference between what appellees paid to Bonnett and their contract with Young. And finally, pursuant to Oklahoma statute, the appellees were granted reasonable attorney's fees.

The appellant's major contentions here is that summary judgment on the assignment issue was improperly granted. Jones maintains that the custom and usage in the Oklahoma cattle business was a factual question on which there was much dispute between the parties.

■ The trial court determined that the Bonnett-Hefley contracts were assignments of the Jones-Bonnett contracts based solely on the depositions, which were taken to be true, of Jones and his employee Moore. These contracts were within the Oklahoma Uniform Commercial Code because cattle are "goods". Okla.Stat. Tit. 12A § 2–105 (1971) (all Oklahoma Code references will be to Title 12A). The Code section dealing with assignments, § 2–210, does not require the use of any particular language in order to effect an assignment. Comment 7 to § 2–210 explains that Article 2 of the Code does not deal with the proper form for assignment or the need for or effect of notice of assignment. Therefore, the case law of Oklahoma governs for § 1–103 indicates that the principles of law and equity shall supplement the Act unless the Code specifically states otherwise. In conjunction with the common law source, contractual language may be interpreted in accordance with the course of dealing between the parties and the usage of trade in the business at issue § 1–105.

■ To be noted is that under Oklahoma law no particular words are necessary to effect an assignment as long as the parties' intent to make such an assignment is apparent. *Ingram v. Mandler*, 56 F.2d 994, 996 (10th Cir. 1932); *Cobb v. Baxter*, 292 P.2d 389 (Okl.1956). The intent to assign may be ascertained by the custom and usage of the cattle broker trade or through the parties' course of dealing.

■ From an examination of the depositions of appellant Jones and his employee Al Moore, it appears that Jones and Moore have correctly described the dealings of cattle brokers when the same cattle are contracted for through the use of several instruments, these serve as mere assignments. The broker or the feedlot owner who is last in the chain receives the cattle directly from the initial seller, namely, the farmer or rancher. A down payment or deposit is made by each buyer all along the chain.

Upon delivery to the final buyer full payment is made to the initial seller and the commissions are settled throughout the chain of purchases and sales. Thus, the usage of trade of assigning cattle through separate contracts was described by appellant's own testimony. We conclude that the lower court did not err in relying on Jones' deposition. No factual issue was present as to the effect of the Bonnett-Hefley contracts and summary judgment on the assignment issue is proper.

■ Apart from the Jones and Moore descriptions of how the cattle business operates, we have the prior dealings between Jones and Bonnett which describe a course of dealing consistent with appellees' claim that the Hefley-Bonnett contracts constitute assignments of the Bonnett-Jones contracts at issue. Jones deposed that he had numerous dealings with Bonnett until Bonnett got into financial trouble. Jones was aware that on many occasions the cattle he sold to Bonnett remained assigned to the Cactus Feed Yards. These assignments were in effect in the same contract form that Bonnett used to sell to appellees. It fails to mention any assignment of the right to demand performance from Jones. Jones honored the contracts as assignments and made delivery to the Cactus Feed Yards. The only difference was that Cactus sent Jones a notice of assignment signed only by the assignee Cactus. An adequate course of dealing was described so that Jones cannot complain that appellees had no right to demand performance from him.

■ Appellant complains of the lower court's refusal to permit Jones to amend his answer to include the real party in interest defense. This issue is without merit. Jones had the facts before him to assert this defense for a year and a half from the time the complaint was filed. He based the defense on the erroneous conclusion that because appellees had assigned the rights of the heifers and steers to others, they had no right to any damages, nor any right to

prosecute this claim. While appellees did assign away the right to possession of the cattle, they did, indeed, incur damages that could be sought from Jones. The real party in interest requirement of Rule 17(a) is to prevent a defendant from multiple suits and multiple damage awards growing out of the same claim. Although appellees are here the assignors of the 508 heifers and the 1,500 steers, they are proper parties. They have fully settled with their assignees in the chain; explicitly in the case of Young and Sparks, and implicitly in dealing with Heinold Cattle Market. Claims of the final assignees have been assigned back to Hefley and Martin to prosecute. Jones is in no danger of being liable for multiple damages.

██ However, there is no necessity for our basing support for the lower court's refusal to permit the amendment on the substance of this defense, because Jones simply waited too long to move to amend his answer. The real party in interest defense is "for the benefit of a defendant should be raised in timely fashion or it may be deemed waived." *Audio Visual Marketing Corporation v. Omni Corporation*, 545 F.2d 715, 719 (10th Cir. 1976). Under the circumstances the trial court was within its discretion in refusing to permit this amendment sixteen days prior to trial. This situation is similar to that which occurred in *McLouth Steel Corporation v. Mesta Machine Company*, 116 F.Supp. 689, 691 (Dist. Pa.1956), *aff'd. on other grounds*, 214 F.2d 608 (3d Cir. 1954), *cert. denied*, 348 U.S. 873, 75 S.Ct. 109, 99 L.Ed. 687:

> After two years of procedural maneuvering defendants presented their motion (to add the real party in interest defense) four days before the day on which the case was set for trial, after all parties had prepared and witnesses had been brought from considerable distances. It is hard to see how a motion could be less timely.

██ Appellant asserts another procedural ground for reversal. At the trial on the issue of damages, appellees received permission to substitute a witness who had not been endorsed in the pretrial order; the order was subsequently amended. This witness, Frank Reed, was substituted for Arnold Young, who had purchased the heifers from Jones. Reed was Young's bookkeeper and accountant. His testimony merely identified three documents—a check, an invoice and the contract between Young and Hefley. These documents were furnished to Jones and were listed as plaintiffs' exhibits in the pretrial order. This evidence and Reed's testimony merely supported Hefley's claim that Young had lost $39,457.50 in covering on the contract with Heinold, and that appellees obligated themselves to repay this sum to Young. The lower court told counsel for appellees that it would closely scrutinize Reed's testimony in the interest of fairness. Nothing from that testimony unfairly prejudiced Jones. The substitution of a witness who is not endorsed on the pretrial order is left to the sound discretion of the trial court. *Stroud v. B–W Acceptance Corp.*, 372 F.2d 185, 189 (10th Cir. 1967). We find no abuse of discretion in permitting Reed to testify.

██ Appellant complains that the trial court's grant of summary judgment against him on his claimed right to a set-off of his losses in dealing with Bonnett was error. This issue is governed by Oklahoma law in this diversity suit. Although there is little law on this subject, it appears Oklahoma follows the rule that an assignee is subject to any defense that may be raised against the assignor if the right of action has accrued at the time of assignment. *McMann v. H. F. Wilcox Oil & Gas Co.*, 121 Okl. 167, 250 P. 780 (1926). The *McMann* case illustrates that the date of the notice of assignment is not of significance under Oklahoma law, but instead, it is whether the defendant's claim against the assignor has matured which determines whether this claim may be set off against the assignee. *McMann* cites *Martin v. Kunzmuller*, 37 N.Y. 396, 402 (1864) for this proposition:

The defendants' difficulty is that at the time of the assignment, * * * to the plaintiff in this case, the demand of the defendants had not matured so as to be the subject of a set off; and when it had so matured, the demand against them * * had passed into the hands of the plaintiff, against whom they had no claim.

■ Bonnett's assignments of the heifers and steers to Hefley occurred in March and Jones was not aware that Bonnett would not be able to deliver the 1,000 heifers and 2,050 calves until some time in May. Jones cannot set off his claim against appellees. Hefley's late written notice of assignment in September is of no significance. As of March 24th, when the second contract between Bonnett and Hefley was made, Jones had no knowledge that Bonnett would not be able to perform on the March 9 and April 10 contracts which led to Jones' losses. There was no error in granting summary judgment against Jones on his claim of set-off. See *National Bank of Commerce v. ABC Construction Co.*, 442 P.2d 269, 276–77 (Okl.1966).

One other item that needs to be addressed and that is appellant's assertion that the lower court erred in awarding attorney's fees to appellees. Apparently, although the order is not part of the record on appeal, the lower court granted Hefley and Martin $10,000 in attorney's fees pursuant to Okla.Stat. Tit. 12 § 936 (1971). This section provides for an allowance of a reasonable attorney's fee to be set by the court and to be treated as costs.

■ There is no doubt that the cattle involved in the contracted dispute are goods within the meaning of the statute. Section 2–105(1) of the Oklahoma U.C.C. Accordingly, this statute is applicable. State law is to be looked to in determining the propriety of an award of attorney's fees in a diversity suit. *Toland v. Technicolor, Inc.*, 467 F.2d 1045 (10th Cir. 1972). Attorney's fees were awarded in *Arine v. McAmis*, 603 P.2d 1130, 1132 (Okl.1979), pursuant to

§ 936 where plaintiff obtained recission and damages related to a contract to purchase a quarter horse mare.

■ Adequate proof of the value of the attorney's services for the prevailing client must be shown before a proper award can be made. *Bradford v. Plains Cotton Cooperative Ass'n*, 539 F.2d 1249, 1256 (10th Cir. 1976), *cert. denied*, 429 U.S. 1042, 97 S.Ct. 743, 50 L.Ed.2d 754 (1977); *Sarkeys v. Haas*, 402 P.2d 894, 901 (Okl.1965). The record reflects that the appellees tendered to the court time records kept by appellees' counsel and affidavits in support of the claim. A hearing was held with expert witnesses on both sides testifying as to the reasonableness of the fees sought. Appellees had requested over $12,000. The court upon hearing and receiving the evidence awarded $10,000 in attorney's fees. We hold that this is supported by the record and that there is no legal issue involved.

In summary, the problem boils down to the departure of Bruce Bonnett with the down payment of Jones in the amount of $81,500. The cattle market was on the rise. Jones had agreed to sell cattle to Bonnett that were then sold to Hefley and Martin. Jones sought to mitigate his loss which resulted from the departure of Bonnett with the $81,500 down payment and Jones' action in covering in a rising open market by selling the 508 heifers and 1,500 steers for $100,000 profit. The trial court was correct in its holding that Hefley and Martin had a valid assignment of the cattle Jones had already sold to Bonnett and that Jones breached the contract by failing to make delivery to Hefley and Martin. Jones had no set-off against them. Hefley and Martin were entitled to recover.

The judgment of the trial court is affirmed.