**UNITED STATES of America, Plaintiff,**

v.

**MIDPAC LUMBER CO., LTD., Defendant.**

**CV. No. 96–00674–DAE.**

United States District Court, D. Hawai'i.

Aug. 29, 1997.

Michael Chun, U.S. Atty.'s Office, Honolulu, HI, Thomas J. Sawyer, U.S. Dept. of Justice, Trial Atty., Tax Division, Washington, DC, Bernard J. Knight, Jr., U.S. Dept. of Justice, Washington, DC, for Plaintiff.

Kurt K. Kawafuchi, Goodsill, Anderson, Quinn & Stifel, Honolulu, HI, Wayne W.S. Wong, Lee, Kim, Wong, Yee & Lau, Honolulu, HI, for Defendant.

*ORDER GRANTING IN PART AND DE-NYING IN PART PLAINTIFF'S MO-TION FOR SUMMARY JUDGMENT; DENYING DEFENDANT'S COUN-TERMOTION FOR SUMMARY JUDGMENT*

DAVID ALAN EZRA, District Judge.

The court heard Plaintiff's Motion for Summary Judgment and Defendant's Countermotion for Summary Judgment on August 29, 1997. Bernard J. Knight, Esq., appeared at the hearing on behalf of Plaintiff; Wayson W.S. Wong, Esq., appeared at the hearing on behalf of Defendant. After reviewing the motion and the supporting and opposing memoranda, the court GRANTS IN PART and DENIES IN PART Plaintiff's Motion for Summary Judgment and DENIES Defendant's Motion for Summary Judgment.

## BACKGROUND

MidPac Lumber Company, Ltd. ("Defendant") sells construction materials and supplies for residential and commercial construction projects. As part of its business, Defendant also provides performance bonds and/or payment bonds to contractors on specific construction projects, where the financing institution for the project requires such bonds. In a performance bond, Defendant guarantees to the owner and lender that the project will be completed according to con-

tract specifications. In a payment bond, Defendant guarantees to the owner and lender that all subcontractors and suppliers for the construction project will be paid.

Defendant does not charge its customers for the performance or payment bonds, but instead offers the bonds as an accommodation to a contractor to encourage the contractor to purchase his materials and supplies from Defendant. Before deciding to issue a bond on a particular project, Defendant reviews the plans and budget for the project to determine whether the project is likely to generate a profit.

Land Data & Research Corporation ("Land Data") was a general contractor for residential and commercial construction projects. Defendant sold construction materials and supplies to Land Data for its construction projects. Defendant also provided Land Data with performance and payment bonds for some of its construction projects, where the lending institution for a particular project required a bond. Defendant did not charge Land Data a fee for issuing these bonds.

This case concerns the performance and payment bonds which Defendant agreed to provide to Land Data for three separate construction projects. These bonds are more fully described as follows:

(1) Bond dated February 10, 1993, with Kaimana Construction as the Principal, [Defendant] as the Surety, and Bank of Hawaii and Julian Gionson and Felicidad Gionson as the Owners in the sum of $115,985. (The Gionson Bond.)

(2) Bond dated August 18, 1992, with Kaimana Construction as the Principal, [Defendant] as the Surety, and First Hawaiian Bank, Mr. and Mrs. James Endo, and Vernon Endo as the Owners in the sum of $292,000. (The Endo Bond.)

(3) Bond Dated August 16, 1992, with Kaimana Construction as the Principal, [Defendant] as the Surety, and Finance Factors, Ltd., Darlene Nakapalau, Barbara Butcher, and Keith Naone as the Owners in the sum of $320,384. (The Nakapalau Bond.)

The Bonds issued by Defendant were printed on a standard form which was signed by the Principal and the Owner of the con-

struction project. This form contained a paragraph dealing with "Assignment" which provided:

> In consideration of the execution of the foregoing Bond by Surety, Principal does hereby sell, assign, transfer and set over unto Surety, its successors and assigns, all moneys now due and payable or that may hereafter become due and payable under said Contract, together with all moneys now due and payable or that may hereafter become due and payable to Principal for extra work and/or extra material now or at any time hereafter furnished by Principal pursuant to the terms of Said Contract and/or any alteration or modification thereof.

Pursuant to the terms of these Bonds, the owners or lenders of the Gionson, Endo, and Nakapalau projects, paid the progress payments for these projects to Defendant.

On June 24, 1993, Land Data filed for Chapter 11 bankruptcy (which was later converted by the Bankruptcy Court to Chapter 7). On October 19, 1993, a Stipulation for Release of Proceeds from Bonded Jobs was filed in the U.S. Bankruptcy Court. This Stipulation was entered into by and between Land Data, the State of Hawaii, the United States, and Defendant. The Stipulation provided that:

> the Debtor (Land Data) has made arrangements with [Defendant] to act as an account agent for the payment of certain costs and expenses incurred on certain projects, hereinafter designated the 'Bonded Jobs'. These Bonded Jobs include the Endo, Gionson, and Nakapalau contracts.

Pursuant to this Stipulation Agreement, Defendant periodically released funds to Land Data for supplies, labor and general overhead expenses for the Endo, Gionson and Nakapalau projects. After all disbursements had been made, Defendant retained $22,439.87 in excess funds on the Gionson job and $17,939.44 in excess funds on the Nakapalau job.

On May 12, 1995, the Internal Revenue Service ("IRS") served a Notice of Levy on Defendant for any property or rights to property in its possession belonging to Land Data.[1] On June 9, 1995, the IRS served a

---

1. The United States had previously made assessments against Land Data and filed Notices of

Final Demand on Defendant for any property or rights to property in its possession belonging to Land Data. Defendant refused to comply with the levy, claiming that it does not have any property belonging to Land Data.[2]

## STANDARD OF REVIEW

Rule 56(c) provides that summary judgment shall be entered when:

> [T]he pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law.

Fed.R.Civ.P. 56(c). The moving party has the initial burden of demonstrating for the court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986) (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970)). However, the moving party need not produce evidence negating the existence of an element for which the opposing party will bear the burden of proof at trial. *Id.* at 322, 106 S.Ct. at 2552.

Once the movant has met its burden, the opposing party has the affirmative burden of coming forward with specific facts evidencing a need for trial. Fed.R.Civ.P. 56(e). The opposing party cannot stand on its pleadings, nor simply assert that it will be able to discredit the movant's evidence at trial. *See T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987); Fed.R.Civ.P. 56(e). There is no genuine issue of fact "where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." *Matsushita Electric Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986) (citation omitted).

A material fact is one that may affect the decision, so that the finding of that fact is relevant and necessary to the proceedings. *Anderson v. Liberty Lobby, Inc.*, 477 U.S.

242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). A genuine issue is shown to exist if sufficient evidence is presented such that a reasonable fact finder could decide the question in favor of the nonmoving party. *Id.* The evidence submitted by the nonmovant, in opposition to a motion for summary judgment, "is to be believed, and all justifiable inferences are to be drawn in [its] favor." *Id.* at 255, 106 S.Ct. at 2513. In ruling on a motion for summary judgment, the court must bear in mind the actual quantum and quality of proof necessary to support liability under the applicable law. *Id.* at 254, 106 S.Ct. at 2513. The court must assess the adequacy of the nonmovant's response and must determine whether the showing the nonmovant asserts it will make at trial would be sufficient to carry its burden of proof. *See Celotex*, 477 U.S. at 322, 106 S.Ct. at 2552.

At the summary judgment stage, this court may not make credibility determinations or weigh conflicting evidence. *Musick v. Burke*, 913 F.2d 1390, 1394 (9th Cir.1990). The standard for determining a motion for summary judgment is the same standard used to determine a motion for directed verdict: does the evidence present a sufficient disagreement to require submission to a jury or is it so one-sided that one party must prevail as a matter of law. *Id.* (citation omitted).

## DISCUSSION

Defendant makes two arguments in support of its position that it did not have any property or property rights belonging to Land Data at the time of the levy. First, Defendant argues that at the time of the levy, Land Data was separately indebted to Defendant in the sum of $91,422.57. Because Land Data's indebtedness was greater than the money owed to Land Data on the Gionson and Nakapalau projects, Defendant claims that it was not in possession of any property or property rights belonging to

---

Federal Tax Liens in an amount totaling $356,-535.83.

**2.** This court takes notice of the fact that both Plaintiff and Defendant failed to file a *separate* statement of material fact in support of their respective motions for summary judgment. Although both parties filed a Statement of Facts, these statements were included in the Motions for Summary Judgment and were not filed separately as required by Local Rule 220–10.

Land Data. In its second argument, Defendant contends that pursuant to the terms of the bonds issued on the Gionson and Nakapalau projects, Land Data "assigned" all ownership rights in the proceeds from these projects to Defendant. Defendant therefore alleges that this assignment divested Land Data of any property or property rights in the Gionson and Nakapalau projects to which the levy could attach.

The United States ("Plaintiff") argues that the $40,379.31 profit on the Nakapalau and Gionson projects belonged to Land Data and was Land Data's property. Plaintiff asserts that Defendant was not entitled to set-off this profit against other monies which Land Data owed to Defendant. In response to Defendant's assignment argument, Plaintiff contends that the bonds did not create an assignment but instead created, at most, a security interest. Because Land Data retained a property interest in these funds, Plaintiff maintains that the levy should attach to this property.

■ Section 6321 of the Internal Revenue Code ("Code") authorizes the Internal Revenue Service ("IRS") to place a tax lien on all property or rights to property belonging to a delinquent taxpayer. 26 U.S.C. § 6321. Where the taxpayer's property is held by a third party, a notice of levy is served pursuant to Section 6332(a) of the Code. 26 U.S.C. § 6332(a). The notice of levy gives the IRS the "right to all property levied upon and creates a custodial relationship between the person holding the property and the IRS." *United States v. Nat'l Bank of Commerce,* 472 U.S. 713, 720, 105 S.Ct. 2919, 2924, 86 L.Ed.2d 565 (1985).

■ "A federal tax lien, however, is not self-executing." *Id.* at 720, 105 S.Ct. at 2924. The IRS must take affirmative action to enforce the lien. The IRS has two primary methods of enforcement. One method is by institution of a lien-foreclosure suit pursuant to Section 7403 of the Code. 26 U.S.C. § 7403. Section 7403 allows the IRS to institute a civil action in federal district court to enforce the lien against the taxpayer's property or property rights. Under Section 7403(b), "[a]ll persons having liens upon or claiming any interest in the property involved in such action shall be made parties thereto." The court then proceeds "to adjudicate all matters involved therein and finally determine the merits of all claims to and liens upon the property." § 7403(c).

■ The second method of enforcing a tax lien is by administrative levy. The administrative levy is only a provisional remedy. *Nat'l Bank of Commerce,* 472 U.S. at 728, 105 S.Ct. at 2928. It allows the IRS to summarily seize the assets of a delinquent taxpayer and protects the government's interest in the property pending a post-seizure hearing. Mertens Law of Fed Income Tax § 54A.51 (1996). Unlike a lien-foreclosure suit, an administrative levy "does not determine the ownership rights to the property. Instead, third parties whose property is seized in an administrative levy 'are entitled to claim that the property has been wrongfully levied upon, and may apply for its return either through administrative channels ... or through a civil action.' " *Nat'l Bank of Commerce,* 472 U.S. at 731, 105 S.Ct. at 2930 (citing *United States v. Rodgers,* 461 U.S. 677, 698–700, 103 S.Ct. 2132, 2145–46, 76 L.Ed.2d 236 (1983)).

■ A person who refuses to comply with a notice of levy may only assert two defenses: (1) that he is not in possession of property belonging to the taxpayer; or (2) that the property is subject to prior judicial attachment or execution. *Id.* at 721–22, 103 S.Ct. at 2156–57; *Texas Commerce Bank–Fort Worth, N.A. v. United States,* 896 F.2d 152, 157 (5th Cir.1990); *State Bank of Fraser v. United States,* 861 F.2d 954, 958–59 (6th Cir.1988), *United States v. Sterling Nat'l Bank & Trust Co. Of New York,* 494 F.2d 919, 921 (2d Cir.1974); *Bank of Nevada v. United States,* 251 F.2d 820, 824 (9th Cir. 1957). Defendant does not assert that the property was subject to a prior judicial attachment or execution. Consequently, Defendant's only defense is that it was not in possession of property or rights to property belonging to Land Data at the time it received the notice of levy.

1. Set-Off

■ As noted above, a federal tax lien attaches to all property or rights to property belonging to the delinquent taxpayer. 26

U.S.C. § 6331. In determining whether such property or rights to property exist, federal and state courts must look to state law. *Aquilino v. United States,* 363 U.S. 509, 513, 80 S.Ct. 1277, 1280, 4 L.Ed.2d 1365 (1960). The Federal Revenue Act does not create property rights, but instead "merely attaches consequences federally defined, to rights created under state law." *United States v. Bess,* 357 U.S. 51, 55, 78 S.Ct. 1054, 1057, 2 L.Ed.2d 1135 (1958). This court must therefore determine whether, under Hawaii law, Defendant was in possession of Land Data's "property" or "rights to property" at the time of the levy.

■ Defendant provided Land Data with performance and payment bonds for the Endo, Gionson, and Nakapalau projects. It is undisputed that the Gionson and Nakapalau projects resulted in a profit of $22,439.87 and $14,393.44, respectively.[3] Defendant alleges, however, that these profits should not be considered Land Data's property because Land Data owed Defendant money on other construction projects.

Defendant's argument is basically one of lien priority. Defendant asserts that its interest in the profits are superior to those of the federal government because Land Data was indebted to Defendant at the time of the levy. However, a claim of lien priority is not a proper defense in an action to enforce a tax levy. *United States v. Citizens and Southern Nat'l Bank,* 538 F.2d 1101, 1106 (5th Cir.1976); *United States v. Sterling Nat'l Bank & Trust Co. of New York,* 494 F.2d 919, 921 (1974); *United States v. Trans–World Bank,* 382 F.Supp. 1100, 1105 (C.D.Cal.1974); *see also United States v. Weintraub,* 613 F.2d 612, 620 (6th Cir.1979) (noting that the running of the statute of limitations is not a proper defense in an action to enforce a levy). As discussed above, a person served with a notice of levy has only two possible defenses: (1) that he is not in possession of property or a property right of the taxpayer; or (2) that the proper-

ty is subject to prior judicial attachment or execution. *Nat'l Bank of Commerce,* 472 U.S. at 721–22, 105 S.Ct. at 2924–25. Therefore, Defendant cannot assert a right of set-off as a defense to its failure to honor the levy. *See Sterling Nat'l Bank,* 494 F.2d at 921.[4]

■ The administrative levy is an extraordinary procedure which allows the Government to secure funds for the payment of taxes. In developing this summary collection procedure, Congress:

> balanced the interest of the Government in the speedy collection of taxes against the interests of any claimants to the property, and reconciled those interests by permitting the IRS to levy on the assets at once, leaving ownership disputes to be resolved in a post-seizure administrative or judicial proceeding.

*Nat'l Bank of Commerce,* 472 U.S. at 729, 105 S.Ct. at 2928. To allow Defendant to raise a claim of set-off in this proceeding would defeat Congress' intent in establishing the administrative levy. In a proceeding to enforce an administrative levy, the court "does not determine the ownership rights to the property." *Id.* at 731, 105 S.Ct. at 2930. Where a third party claims an ownership interest in the levied property, "his exclusive remedy against the United States is a wrongful levy action under I.R.C. § 7426." *United Sand and Gravel Contractors, Inc. v. United States,* 624 F.2d 733, 739 (5th Cir.1980); *Texas Commerce,* 896 F.2d at 156. A claim of set-off is therefore not a proper defense to the enforcement of an administrative levy.

■ Even assuming that Defendant could allege set-off as a defense in this proceeding, Defendant would not be entitled to a set-off under the facts of this case. The bonds on the Gionson and Nakapalau jobs did not provide Defendant with the right to use the proceeds from these jobs to offset Land Data's debts on other construction projects.

---

3. The Endo project did not result in a profit.

4. Although Defendant cannot raise the defense of set-off in this proceeding, Defendant was not without a remedy. First, Defendant could have honored the levy and instituted a wrongful levy proceeding against the IRS, pursuant to 26

U.S.C. Section 7426. In that proceeding, Defendant could have asserted its claim of lien priority. Second, pursuant to 28 U.S.C. Section 2410 and Rule 22 of the Federal Rules of Civil Procedure, Defendant could have instituted an interpleader action in a federal court, asserting its claim of lien priority.

Consequently, Defendant did not have a contractual right to set-off.

The court was also unable to find any Hawaii authority which suggests that Defendant has a statutory or common-law right to set-off under these circumstances. Defendant cited Hawaii Revised Statutes Section 652–2 in support of its argument that Hawaii law does provide a right of set-off. However, Section 652–2 deals with the rights of a garnishee of a judgment creditor. Defendant was not, at any time, a judgment debtor of Land Data. This section is therefore inapplicable. *See Nat'l Bank of Commerce,* 472 U.S. at 727, 105 S.Ct. at 2927 (holding that a state created right to offset in a garnishment proceeding was irrelevant in an action to enforce a tax levy).[5]

Finally, Defendant alleges that because its accounts receivables showed that Land Data owed Defendant $90,422.57 at the time of the levy, Defendant should be allowed to set-off the profits from the Gionson and Nakapalau jobs against this debt. Defendant fails, however, to provide any Hawaii authority which suggests that this right to set-off exists. The court is unwilling to create Hawaii law, where no such law exists. The court therefore grants Plaintiff's Motion for Summary Judgment with respect to the issue of set-off.

2. Assignment

■ As an alternative to its set-off argument, Defendant alleges that Land Data "assigned" all of its property or property rights in the Gionson and Nakapalau projects to Defendant. Defendant contends that this assignment was effected through the language contained in the bonds for the two projects. Under the heading "ASSIGNMENT AND POWER–OF–ATTORNEY", the bond form for both projects provided as follows:

> In consideration of the execution of the foregoing Bond by Surety, Principal does hereby sell, assign, transfer and set over unto Surety, its successors and assigns, all moneys now due and payable or that may hereafter become due and payable under said Contract, together with all moneys now due and payable or that may hereafter

become due and payable to Principal for extra work and/or extra material now or at any time hereafter furnished by Principal pursuant to the terms of Said Contract and/or any alteration or modification thereof.

Defendant alleges that by virtue of this language, Land Data relinquished all property or property rights in the Gionson and Nakapalau projects and Land Data therefore had no interest in the profits from these projects at the time of the levy. Plaintiff contends that this language created at most a security interest and Land Data therefore retained a sufficient ownership interest in the profits for the levy to attach.

■ Under Hawaii Revised Statutes Section 490:1–201(37), a "security interest" is defined as "an interest in personal property or fixtures which secures payment or performance of an obligation." There is no corresponding definition in the Statutes for an "assignment." In determining whether an agreement constitutes an assignment or a security interest, courts look to the parties' intent. *Estate of Bowgren v. Commissioner of Internal Revenue,* 105 F.3d 1156, 1162 (7th Cir.1997); *Hefley v. Jones,* 687 F.2d 1383, 1387 (10th Cir.1982); *Smoker v. Hill & Associates, Inc.,* 204 B.R. 966, 972 (1997). The court is not bound by the label given by the parties to the agreement, but will look beyond the label to determine its purpose. *Major's Furniture Mart, Inc. v. Castle Credit Corp.,* 602 F.2d 538, 543 (3d Cir.1979).

In the bonds which Defendant provided for the Gionson and Nakapalau projects, Land Data agreed "to sell, assign, transfer and set over unto Surety, ... all moneys now due and payable or that may hereafter become due and payable under" the contract. This language suggests that the bonds created an assignment, a conclusion which is also supported by the title given to this section of the bond ("Assignment"). However, the court must look beyond the words of the agreement itself and determine what the parties intended to create by this language. *Id.* at 543.

---

**5.** Defendant cites a number of cases in support of its right to set-off. *See, e.g., Karno–Smith Co. v. Maloney,* 112 F.2d 690, 692 (3rd Cir.1940).

However, none of these cases address the right to set-off under Hawaii law. Consequently, the court finds these cases to be of little value.

Plaintiff argues that the bonds did not create an "assignment", but merely operated to secure Land Data's performance on a particular project. In support of this argument, Plaintiff offers the deposition testimony of Defendant's Vice President, Dennis Hironaka. In his deposition, Mr. Hironaka stated that, on bonded jobs, Defendant would pay the profits over to the contractor if the contractor was not otherwise indebted to Defendant. Hironaka's Deposition at 17(17)–18(23), 22(22)–23(5), 26(18)–27(12). This testimony suggests that Defendant only retained a security interest in the contract proceeds. Plaintiff also points to the language contained in the Stipulation to Release Proceeds from Bonded Jobs. In that document, Defendant agreed to act as an "account agent" for Land Data for the payment of the costs and expenses on the Endo, Gionson, and Nakapalau projects. Plaintiff argues that this document further indicates that Land Data did not transfer its entire interest in the contract proceeds to Defendant.

In response to these arguments, Defendant asserts that Land Data did not retain any control over the contract proceeds. To support this argument, Defendant points to the declaration of Mr. Hironaka. In his declaration, Mr. Hironaka states that the purpose of each "assignment" was "to transfer ownership of the contract proceeds" to Defendant to ensure that the projects would be completed according to contract specifications. Hironaka Declaration ¶ 12. This statement suggests that the bonds created an assignment, not a security interest.

If the bonds created an assignment, Defendant was justified in not complying with the levy because it was not in possession of Land Data's property at the time of the levy. If, however, the bonds merely created a security interest, the levy would attach to Land Data's interest in the property and Defendant would have to comply with the levy. The parties have presented conflicting evidence as to whether the bonds were intended to operate as an assignment or as a security interest. The court therefore concludes that because there is genuine issue of material fact as to this issue, summary judgment for Plaintiff or Defendant is inappropriate.

## CONCLUSION

For the reasons stated above, the court GRANTS Plaintiff's Motion for Summary Judgment with respect to the issue of set-off and DENIES Plaintiff's and Defendant's Motion for Summary Judgment with respect to the issue of assignment.

IT IS SO ORDERED.